EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Haydeé Ortiz González<br><br>    Recurrida<br><br>        v.<br><br>Burger King de Puerto Rico,<br>José Rivera, Daisy Vázquez<br><br>    Peticionarios<br>_____<br>Haydeé Ortiz González<br><br>    Peticionaria<br><br>        v.<br><br>Burger King de Puerto Rico,<br>José Rivera, Daisy Vázquez<br><br>    Recurridos | Certiorari<br><br>2013 TSPR 77<br><br>188 DPR ____ |

Número del Caso:   CC-2009-243
                   AC-2009-20


Fecha: 27 de junio de 2013


Tribunal de Apelaciones:

        Región Judicial de Caguas, Panel XII



**CC-2009-243**

Abogada de la Parte Peticionaria:

        Lcda. Sara Chico Matos

Abogados de la Parte Recurrida:

        Lcdo. Pedro A. Delgado Hernández
        Lcdo. Diego Ledeé Bazán
        Lcdo. Pedro Rosario Díaz

**AC-2009-20**

Abogados de la Parte Peticionaria:

        Lcdo. Diego Ledeé Bazán
        Lcdo. Pedro Rosario Pérez

Abogado de la Parte Recurrida:

        Lcdo. Pedro A. Delgado Hernández

Materia: Sentencia con Opiniones de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Haydeé Ortiz González<br><br>Recurrida<br><br>v.<br><br>Burger King de Puerto Rico, José Rivera, Daisy Vázquez<br><br>Peticionarios<br>_____<br><br>Haydeé Ortiz González<br><br>Peticionaria<br><br>v.<br><br>Burger King de Puerto Rico, José Rivera, Daisy Vázquez<br><br>Recurridos | CC-2009-0243<br><br><br><br>cons. con<br><br><br><br>AC-2009-0020 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 27 de junio de 2013

Comparecen la señora Haydeé Ortiz González y el señor José Rivera, quienes por separado solicitan la revocación de la sentencia emitida por el Tribunal de Apelaciones para el caso de referencia. La señora Ortiz argumenta que el foro apelativo erró al exonerar de responsabilidad a su antiguo patrono, Caribbean Restaurants, por los actos de hostigamiento sexual en el empleo a los que estuvo sujeta. Por su parte, el señor Rivera plantea que dichos actos no constituyeron hostigamiento sexual y, en la alternativa, que Caribbean Restaurants respondía solidariamente. Veamos.

I

La señora Haydeé Ortiz González trabajó para la empresa Caribbean Restaurants como empleada parcial irregular del establecimiento de comida rápida Burger King de Villa Blanca, en Caguas, desde el 9 de noviembre de 1999 hasta el 5 de septiembre de 2000, fecha en que presentó su renuncia. Previo a comenzar en su empleo, recibió las políticas contra el hostigamiento sexual adoptadas por la empresa, las normas de conducta y la información de los procedimientos para dilucidar diferencias. Dicha política requería que se realizara una querella escrita y establecía dónde debía presentarse. El restaurante también tenía afiches contra el hostigamiento sexual y una línea especial para atender querellas. Además, luego de comenzar su empleo, la señora Ortiz recibió un adiestramiento especial sobre hostigamiento sexual.

En el Burger King de Villa Blanca había un gerente, la señora Daisy Vázquez, y un subgerente, el señor José Rivera. La señora Ortiz alega que el señor Rivera comenzó a hostigarla sexualmente entre mayo a agosto de 2000. Según la sentencia del Tribunal de Primera Instancia éste le expresó frases tales como: "mami, ¿todo eso es tuyo?"; "si te cojo, te saco la habichuelita"; y "a ti lo que te hace falta es un buen beso de lengua". También, arguyó que cuando el señor Rivera pasaba por espacios limitados se rozaba contra su cuerpo y que, cuando él estaba a cargo, le imponía tareas que propiciaran pasar cerca de ella para

rozarla, aprovechando su autoridad. La señora Ortiz señaló que quedó muy ofendida con los actos del subgerente y que así lo hizo saber a la gerente.

Conforme a los señalamientos del Tribunal de Primera Instancia, en una ocasión el señor Rivera le dijo a la señora Ortiz que "soltara el cabrón teléfono". Por ello, el 27 de agosto de 2000, ella se quejó con la gerente Vázquez, lo cual produjo una reunión en la que el señor Rivera admitió lo sucedido y pidió disculpas a la empleada. No obstante, al finalizar la reunión, Rivera le indicó a Ortiz que "si la cosa estaba mala, se iba a poner peor". La empleada trató de comentarle lo ocurrido a la señora Vázquez, pero ésta no la atendió.

El 30 de agosto de 2000, la señora Ortiz le indicó a la señora Vázquez que quería presentar una queja de hostigamiento sexual en contra del señor Rivera. La señora Vázquez habló con el supervisor de área, quien le reiteró que debía hacerse una reclamación escrita. Al próximo día, la señora Ortiz quiso retirar la queja, pero se le indicó que, por haber sido alertados, debían investigar y seguir los procedimientos de la empresa. Por ende, se prosiguió con la queja y se le notificó al señor Rivera de la misma. Además, se le instruyó a éste que no podía ir a trabajar hasta tanto culminara la investigación.

El 5 de septiembre de 2000 se celebró una reunión en las oficinas centrales de la empresa con el propósito de dirimir la queja. La señora Ortiz expresó las frases inapropiadas que el subgerente le decía y contó que en una

ocasión éste extendió su mano para tocarla. También hizo referencia al incidente de la frase soez. La empresa citó posteriormente al señor Rivera, quien renunció voluntariamente para evitar ser despedido.

Conforme a las determinaciones del Tribunal de Primera Instancia, la señora Ortiz fue víctima de mofas en el empleo ya que todos los compañeros se enteraron de lo ocurrido. Le decían "no me toques que te denuncio por hostigamiento sexual", entre otras bromas. De hecho, la señora Ortiz alegó que la gerente, la señora Vázquez, patrocinó y permitió las bromas. Incluso, mencionó que el señor Rivera fue a visitar el establecimiento mientras la señora Ortiz estaba en funciones, todo ello con anuencia de la gerente.

El 13 de noviembre de 2000, la señora Ortiz y otro empleado sometieron queja escrita contra la señora Vázquez. Se entrevistaron con personal del departamento de recursos humanos, al cual indicaron que la gerente no cumplía con el manual de la empresa y que no tenía buena relación con su personal. Mencionaron que ésta los ofendía, les gritaba y utilizaba lenguaje soez frente a otros compañeros, clientes e invitados. Personal del departamento acudió al restaurante a entrevistar a los empleados, los cuales favorecieron a la gerente.

Posteriormente, la señora Ortiz solicitó traslado por problemas personales con la señora Vázquez. No satisfecha con la resolución de su queja, la empleada regresó al departamento de recursos humanos e indicó que la gerente le

redujo sus horas en represalia por haber presentado la querella de hostigamiento sexual contra el señor Rivera.

Días después, la señora Vázquez le informó a la señora Ortiz que se le había trasladado al restaurante de Plaza Centro donde no se le garantizaría el mismo horario. La señora Ortiz, indignada, alzó la voz y dijo "que se vayan todos al carajo; esto no se va a quedar así". El 26 de marzo de 2001, la señora Ortiz presentó otra queja escrita contra Vázquez en la oficina de recursos humanos, por la reducción de horarios y problemas con la documentación de desempleo. Esta oficina volvió a recomendar el traslado de la señora Ortiz, pero esta vez a un lugar más cerca de la residencia de la empleada. No obstante, ésta decidió renunciar el 19 de abril de 2001.

Así las cosas, la señora Ortiz presentó demanda contra su patrono, la señora Vázquez y el señor Rivera por despido injustificado, hostigamiento sexual en el empleo y represalias ante el Tribunal de Primera Instancia. El Tribunal emitió sentencia en la que dispuso que la señora Ortiz no logró evidenciar que su renuncia se debiera a las condiciones onerosas que le impuso la empresa por haber acusado de hostigamiento al señor Rivera. Es decir, concluyó que no se trató de un despido constructivo.

Sin embargo, determinó que hubo hostigamiento sexual por parte de Rivera y, por ende, del restaurante. Mencionó que "realmente hay que reconocer que la alta jerarquía de Caribbean Restaurants trató el hostigamiento sexual de Rivera hacia la demandante de una manera adecuada. Tan

pronto advino en conocimiento del hostigamiento lo documentó, inmediatamente suspendió a Rivera, eliminando así la causa del hostigamiento". En fin, el Tribunal concluyó que la empresa realizó actos afirmativos para evitar el hostigamiento y desalentarlo, pero que "desafortunadamente" la empresa respondía por ser el señor Rivera supervisor conforme al artículo 5 de la Ley Núm. 17 de 22 de abril de 1988 (en adelante Ley 17), 29 L.P.R.A. sec. 155. Además, indicó que la señora Vázquez fue negligente al no mantener un ambiente ordenado luego de la investigación de hostigamiento, y que por ello también debía responder el patrono. Ordenó a los demandados pagar $10,000 por los daños y perjuicios y angustias mentales provocadas por los actos del señor Rivera y $1,000.00 por los actos de la gerente. Además, impuso costas y $2,750.00 en honorarios de abogado.

Todas las partes acudieron por separado al Tribunal de Apelaciones solicitando la revisión de la misma sentencia. La señora Ortiz alegó que las cuantías concedidas estaban muy por debajo de los daños causados y que la Ley 17 requería que se duplicara la suma concedida, mientras que el patrono argumentó que erró el Tribunal de Primera Instancia al imponerle responsabilidad vicaria a pesar de haber cumplido plenamente con la ley y al responsabilizarlo por daños que la demandante pudo haber evitado de haber utilizado los mecanismos establecidos por la empresa; que los actos del señor Rivera no constituyeron hostigamiento

sexual; y que tampoco procedía la imposición de honorarios de abogados.

Por su parte, el señor Rivera se opuso al recurso de la señora Ortiz y sostuvo que no se cumplieron los elementos de hostigamiento sexual. En la alternativa, alegó que no se demostró que el hostigamiento causara cambios en los términos y condiciones del empleo de la señora Ortiz. También impugnó que se estableciera que existió un patrón no consentido de conducta degradante e intentos de roces corporales. Finalmente, planteó que, en caso de entenderse que hubo hostigamiento, el patrono debía responder ya que se trataba de un asunto de responsabilidad absoluta.

El Tribunal de Apelaciones emitió sentencia en la cual exoneró a Caribbean Restaurants de responder por hostigamiento sexual. Aseguró que el patrono cumplió con su deber al actuar conforme a sus procedimientos y al promover activamente una política de prevención. Incluso ordenó al señor Rivera pagar exclusivamente los honorarios de abogado concedidos por el foro primario. En cuanto a los daños concedidos por los actos de la gerente, el foro apelativo mantuvo la responsabilidad impuesta al patrono. Por último, el Tribunal de Apelaciones estuvo de acuerdo con la compensación otorgada por el foro primario, mas duplicó las cuantías en cumplimiento del artículo 11 de la Ley 17, 29 L.P.R.A. sec. 155j.

Evaluados los planteamientos esbozados por ambas partes, resolvemos que erró el Tribunal de Apelaciones al exonerar de responsabilidad a Caribbean Restaurants. Por

tanto, se modifica la sentencia recurrida y se ordena a todos los demandados satisfacer solidariamente a la señora Ortiz González las siguientes partidas: $10,000 por daños y perjuicios y angustias mentales por los actos de hostigamiento sexual cometidos por el subgerente Rivera en violación al artículo 3 de la Ley 17; $1,000 por los daños y perjuicios ocasionados por la supervisora Vázquez al permitir un ambiente de humillación posterior al momento en que la demandante delató el patrón de hostigamiento sexual del señor Rivera, al amparo del artículo 1803 del Código Civil; costas; y $2,750 por concepto de honorarios de abogado. Además, duplicamos la cuantía de $10,000 concedida a la demandante por los actos de hostigamiento sexual de los que fue víctima, conforme al mandato del artículo 11 de la Ley 17.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad a la que se unieron los Jueces Asociados señores Martínez Torres, Kolthoff Caraballo y Feliberti Cintrón. La Jueza Asociada señora Pabón Charneco no interviene.

Camelia Montilla Alvarado<br>
Secretaria del Tribunal Supremo, Interina

Haydeé Ortiz González

Recurrida

v.

Burger King de Puerto Rico, José Rivera, Daisy Vázquez

Peticionarios

_____

Haydeé Ortiz González

Peticionaria

v.

Burger King de Puerto Rico, José Rivera, Daisy Vázquez

Recurridos

CC-2009-0243

cons. con

AC-2009-0020

*Certiorari*

RESOLUCIÓN
***NUNC PRO TUNC***

San Juan, Puerto Rico, a 2 de julio de 2013

Se enmienda ***nunc pro tunc*** la Sentencia emitida el 27 de junio de 2013 a los efectos de corregir el último párrafo, el cual debe leer de la siguiente manera:

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la que se unieron el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad a la que se unieron los Jueces Asociados señores Martínez Torres, Kolthoff Caraballo y Feliberti Cintrón. La Jueza Asociada señora Pabón Charneco no interviene.

Camelia Montilla Alvarado
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Haydeé Ortiz González | | |
| Recurrida | | |
| v. | | |
| Burger King de Puerto Rico, José Rivera, Daisy Vázquez | CC-2009-0243 | |
| Peticionarios | | *Certiorari* |
| _____ | cons. con | |
| Haydeé Ortiz González | | |
| Peticionaria | | |
| v. | AC-2009-0020 | |
| Burger King de Puerto Rico, José Rivera, Daisy Vázquez | | |
| Recurridos | | |

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico, a 27 de junio de 2013

En esta ocasión teníamos la oportunidad de pautar cuál es el nivel de responsabilidad aplicable a un patrono por actos de hostigamiento sexual en el empleo cometidos por sus empleados. En particular, debíamos determinar si erró el Tribunal de Apelaciones al resolver que un patrono puede desprenderse de su responsabilidad por actos de hostigamiento sexual de sus agentes o supervisores sobre subalternos, mediante actos afirmativos para prevenir o corregir las actuaciones indebidas.

Desafortunadamente, no hemos logrado un consenso sobre los fundamentos para revocar al foro apelativo, por lo cual no se emite hoy una opinión. Ello, a pesar de que el texto del artículo 5 de la Ley Núm. 17 de 22 de abril de 1988 (en adelante Ley 17), 29 L.P.R.A. sec. 155, conocida como la Ley de Hostigamiento Sexual en el Empleo, tal cual fue redactado por el legislador, ofrece a mi juicio una clara respuesta.

Por entender que el artículo 5 de la Ley 17 establece claramente una responsabilidad vicaria de la cual no puede desvincularse el patrono cuando el hostigador es un agente o supervisor de la persona hostigada, estoy conforme con el resultado al que llegamos, mas revocaría expresamente los fundamentos de derecho esbozados por el Tribunal de Apelaciones en la sentencia recurrida y pautaría como derecho aquello que el legislador quiso.

I

A

El 5 de abril de 2001, Haydeé Ortiz González, junto a su esposo, Carlos Olivero Santos, y en representación de la sociedad legal de gananciales compuesta por ambos, presentaron una demanda en contra de Caribbean Restaurants, antiguo patrono de la demandante; Daisy Vázquez, gerente del establecimiento de comida rápida Burger King en el que trabajaba la demandante; y José Rivera, subgerente del mismo local. Los demandantes alegaron que la señora Ortiz fue víctima de hostigamiento sexual, persecución y represalias, por lo que solicitaron una indemnización en daños y perjuicios bajo la Ley 17, 29 L.P.R.A. secs. 155

*et seq.;* la Ley 69 de 6 de julio de 1985, 29 L.P.R.A. secs. 1321 *et seq.;* la Ley 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 148 *et seq.;* los artículos 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141-5142; y la Constitución del Estado Libre Asociado de Puerto Rico.

Por su parte, Caribbean negó que fuera responsable bajo cualesquiera de los estatutos mencionados. Replicó que cumplió con sus obligaciones legales al tomar las medidas correctivas que requiere el ordenamiento.

El 26 de agosto de 2003, el Tribunal de Primera Instancia desestimó la acción personal contra la señora Vázquez, manteniéndola en el pleito sólo en su carácter institucional. Asimismo, el 16 de diciembre de ese año, el foro primario desestimó las reclamaciones del señor Olivero.

Finalizado el desfile de la prueba presentada en juicio el 16 de noviembre de 2007, el Tribunal de Primera Instancia dictó sentencia mediante la cual desestimó la reclamación por despido injustificado, así como las reclamaciones bajo la Ley 100 y la Ley 69. Además, realizó un listado extenso de determinaciones de hechos, cuyos puntos medulares se resumen a continuación:

B

Caribbean Restaurants es una corporación dedicada al expendio de comidas rápidas en sus restaurantes Burger King. La demandante fungió como empleada general en el Burger King de Villa Blanca, en Caguas, desde el 9 de noviembre de 1999 hasta la fecha de su renuncia, el 19 de

abril de 2001. El grupo gerencial de este restaurante consistía de un gerente en propiedad, un subgerente y tres (3) asistentes de gerente. Para la fecha de los hechos aquí en controversia, la señora Vázquez era la gerente, mientras que el señor Rivera era el subgerente.

Como parte de sus funciones como gerente en propiedad, la señora Vázquez se encargaba de asignar las tareas de trabajo, incluyendo los turnos (horarios) de cada empleado. En ausencia de la señora Vázquez, el señor Rivera asumía la dirección del restaurante.

La señora Ortiz alegó que el subgerente Rivera la hostigó sexualmente desde mayo hasta agosto de 2000. Durante el período en que coincidieron en el restaurante, éste le profirió a la demandante, en momentos distintos, los siguientes comentarios: "mami, ¿todo eso es tuyo?", "si te cojo, te saco la habichuelita" y "a ti lo que te hace falta es un buen beso de lengua". También manifestó la demandante que, cuando el señor Rivera trataba de pasar por un espacio limitado, rozaba su cuerpo contra el de ella y que aprovechaba la potestad que tenía para asignarle tareas que desembocaran en este tipo de situación. Ésta se sintió ofendida por estos hechos y le expresó al señor Rivera que evitara el trato irrespetuoso hacia ella.

En una ocasión, el señor Rivera se dirigió de manera agresiva hacia la demandante y le ordenó que "soltara el cabrón teléfono". El 27 de agosto de 2000, la demandante se quejó con la gerente Vázquez sobre este incidente. A raíz de esta queja, la gerente reunió a la partes para

atender el asunto y el señor Rivera admitió haber realizado el comentario, por lo cual pidió disculpas a la demandante. Frente a la gerente, se comprometió a evitar futuras confrontaciones entre las partes. Sin embargo, una vez terminó la reunión, Rivera le dijo a la demandante, en tono agresivo, que "si la cosa estaba mala, se iba a poner peor". Como secuela de esto, la demandante intentó acudir nuevamente a la gerente, mas ésta no la atendió.

Durante este tiempo, la compañía tenía vigente políticas institucionales que prohibían el hostigamiento sexual en el empleo y establecían un procedimiento para dilucidar controversias relacionadas con dicha conducta. La demandante recibió una copia de dichas políticas antes de comenzar a trabajar con Caribbean, así como adiestramiento adicional al respecto durante su tiempo con la empresa. Además, la compañía tenía en todas sus instalaciones y restaurantes afiches del Departamento del Trabajo, en los que mostraba sus políticas antidiscrimen y contra el hostigamiento sexual. También tenía una línea telefónica especial para atender cualquier duda o queja al respecto.

El procedimiento para entablar una queja de hostigamiento sexual de acuerdo con la política de la compañía consistía en pedirle al empleado que presentara una queja por escrito. Dicha política establecía claramente la manera y lugar donde presentarlas.

El 30 de agosto de 2000, la demandante se acercó a la gerente Vázquez para indicarle que deseaba presentar una queja de hostigamiento sexual contra el señor Rivera. La gerente le informó que debía preparar un informe por escrito. Al próximo día, la demandante le informó a la supervisora que no quería continuar con la queja contra Rivera. La gerente se lo indicó al Supervisor de Área de la empresa, el señor Rodríguez, y éste le explicó que, al haber sido notificados de un posible problema de hostigamiento sexual, tenían que cumplir con la política de la compañía e investigar el asunto. Ese mismo día, la demandante se reunió con el señor Rodríguez y le entregó la queja escrita contra el señor Rivera. El Supervisor citó a las partes para una reunión a llevarse a cabo el martes, 5 de septiembre de 2000 en las oficinas centrales de la compañía. Además, por instrucciones de la alta gerencia de la compañía se le advirtió al señor Rivera que, como medida preventiva, no podía regresar a su lugar de trabajo hasta tanto se investigara la queja en su contra.

La demandante acudió a la reunión pautada y reiteró que el hostigamiento consistió de varios comentarios por parte del señor Rivera, en específico: "mami, dame de eso", "mami, todo eso es tuyo", "si te cojo, te saco la habichuelita" y "lo que tú necesitas es un buen beso de lengua". Además, se quejó de que en el área de la nevera del restaurante el señor Rivera extendió la mano para tocarla. Finalmente, expresó que el señor Rivera se dirigió a ella con palabras soeces al decirle que "en vez

de estar sacando la comida, est[aba] pendiente al cabrón teléfono". A preguntas de la gerencia, respondió no haberse quejado sobre esta conducta de Rivera antes de reunirse con la gerente Vázquez el 30 de agosto de 2000.

Concluida la reunión con la demandante, la gerencia entrevistó a la señora Ivette Díaz, empleada del mismo restaurante, quien confirmó haber escuchado a Rivera decirle a la demandante los comentarios imputados. Agregó que a la demandante no pareció molestarle; que ésta sonrió; que la demandante y Rivera se tenían confianza y que bromeaban entre sí. Por último, la gerencia citó al señor Rivera para confrontarlo con las alegaciones realizadas en su contra. Al finalizar la entrevista, Caribbean le permitió al señor Rivera renunciar "voluntariamente" para, según ellos, "no tener que manchar su expediente de trabajo".

Al día siguiente de la reunión en las oficinas centrales de la empresa, el despido del señor Rivera era de conocimiento general en el lugar de empleo de la demandante. Las bromas hacia su persona eran la orden del día y le culpaban por lo sucedido. Expresiones de mofa como "no me toques, que te denuncio por hostigamiento sexual" se repetían mientras trabajaba. La gerente Vázquez patrocinaba y permitía las bromas. A pesar de las quejas de la demandante, Vázquez no detuvo el ambiente de relajo e irrespeto. Como si fuera poco, en múltiples ocasiones luego de su despido, el señor Rivera se presentó al área de trabajo de la demandante y se detuvo a mirarla, murmurando,

con la anuencia de la gerente Vázquez, por lo que la demandante se sintió intimidada.

C

Tras evaluar el cuadro fáctico descrito anteriormente, el juez de instancia concluyó que el codemandado Rivera incurrió en actos de hostigamiento sexual hacia la demandante. Según el foro primario, "las actuaciones de Rivera crearon un ambiente de trabajo ofensivo para la demandante, al punto que sufrió, emocionalmente, al ser rebajada como mujer". *Ortiz González v. Burger King*, ADP2011-0180 (612), en la pág. 24.

Sobre el proceder de Caribbean, ese foro expresó lo siguiente:

> Realmente hay que reconocer que la alta jerarquía de Caribbean trató el hostigamiento sexual de Rivera hacia la demandante de manera adecuada. Tan pronto advino en conocimiento del hostigamiento lo documentó . . . . Despidió (indirectamente) a Rivera y en todo momento mantuvo un centro de trabajo libre de hostigamiento sexual al prevenirlo y desalentarlo a través de sus adiestramientos, reglamentos y carteles al respecto. Caribbean Restaurants actuó afirmativamente en autos como un patrono debe conducirse para prevenir y remediar un caso de hostigamiento sexual.
>
> No obstante esto, Caribbean Restaurants responde por las actuaciones de Rivera por el mero hecho de ser éste un supervisor de la empresa. Caribbean Restaurants, desafortunadamente, responde por la actuación de Rivera, según dispone el Artículo 5 de la Ley 17.
>
> **En Puerto Rico, a diferencia del estado de derecho federal, el patrono responde de manera absoluta por los actos de hostigamiento sexual**

de un supervisor. *Rodríguez Meléndez v. Sup. Amigo*, Inc., 126 D.P.R. 117 (1990).[1]

---

[1]    De entrada, debemos aclarar que al evaluar el expediente de este caso, notamos cierta ambigüedad con respecto al uso de los conceptos de *responsabilidad vicaria* y *responsabilidad absoluta* tanto por las partes involucradas como por los tribunales *a quo* e incluso por miembros de la Asamblea Legislativa, según reflejado en el historial Legislativo de la Ley 17.

A modo de excepción, nuestro ordenamiento jurídico impone responsabilidad civil a ciertas personas por los actos negligentes o culposos de otras personas cuando existe un nexo jurídico previo entre el causante del daño y quien viene obligado a repararlo. Esto se conoce como responsabilidad vicaria. Por ejemplo, el artículo 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. 5142, dispone que los padres responderán por los actos torticeros de sus hijos; los tutores, por los de sus pupilos; los maestros, por los de sus estudiantes o aprendices mientras estén bajo su custodia; y los patronos, por los de sus empleados. En algunos casos, las personas responsables vicariamente podrán ser relevados de responsabilidad de lograr probar que emplearon toda la diligencia de un buen padre o madre de familia para prevenir el daño causado. En esos casos, se trata realmente de una responsabilidad primaria o directa. Sin embargo, en otras ocasiones, las personas llamadas a responder por actos de terceros serán responsables civilmente independientemente de la diligencia que hayan ejercido. En estos casos, estamos ante una responsabilidad estricta o propiamente vicaria.

Por otro lado, existe otro grado de responsabilidad que el Legislador podría imponer a una persona por actos de terceros: la responsabilidad absoluta. Cuando aplica la responsabilidad absoluta, el demandante está eximido de tener que probar uno de los elementos de la causa de acción para reclamar compensación por un acto torticero: la culpa o negligencia. Un ejemplo de este tipo de responsabilidad es el que se impone a un fabricante o vendedor de un producto que resulte defectuoso.

Como puede apreciarse, la responsabilidad propiamente vicaria y la responsabilidad absoluta son conceptos diferentes que no deben utilizarse indistintamente. Mientras que la responsabilidad absoluta exime al demandante de tener que probar un elemento de la causa de acción para ser compensado por daños causados por el demandado, la responsabilidad propiamente vicaria requiere que se prueben todos estos elementos aunque el llamado a responder no sea quien haya actuado culposa o negligentemente.

En el caso ante nuestra consideración, nos vemos llamados a evaluar el tipo de responsabilidad impuesto a un patrono por los actos de hostigamiento sexual en el empleo de sus empleados. Conforme el lenguaje utilizado en la ley y a la naturaleza de la controversia, es evidente que la

*Ortiz González v. Burger King*, ADP2011-0180 (612), en las págs. 24-25 (énfasis suplido).

Por ende, resolvió que los demandados debían indemnizar a la demandante de manera solidaria mediante el pago de $10,0000 en daños, perjuicios y angustias mentales por los actos de hostigamiento sexual del señor Rivera; $1,000 bajo el artículo 1803 del Código Civil por los daños ocasionados por la codemandada Daisy Vázquez al permitir un ambiente de humillación posterior al momento en que la demandante delató el patrón de hostigamiento sexual; costas y $2,750 en honorarios de abogado.

El 7 de febrero de 2008, la demandante presentó una moción mediante la cual solicitó determinaciones adicionales de hechos y de derecho. Por otro lado, el 13 de febrero del mismo año, Caribbean solicitó reconsideración de la sentencia emitida. El tribunal inferior denegó ambas mociones el 20 de marzo y el 4 de abril de 2008, respectivamente.

Inconformes, tanto la demandante como los demandados acudieron oportunamente al Tribunal de Apelaciones. La

---

responsabilidad impuesta es una vicaria y no absoluta. El demandante no está exento de probar la culpa del hostigador, por lo que no estamos ante un caso de responsabilidad absoluta. Ello es totalmente independiente del nivel de responsabilidad asignado al patrono, ya sea directa o propiamente vicaria.

Aunque en adelante utilizaremos adecuadamente los términos discutidos, en ocasiones nos veremos forzados a hacer referencia a fragmentos de las decisiones de los foros *a quo*, así como a expresiones legislativas, en las que se utiliza erróneamente el concepto de responsabilidad absoluta para lo que es claramente responsabilidad propiamente vicaria. En esos casos, el lector deberá interpretarlo como un error conceptual del emisor.

demandante arguyó que la indemnización concedida estaba muy por debajo de los daños causados y que la Ley 17 requería que dicha cuantía fuere duplicada. Caribbean, en cambio, sostuvo que actuó de manera diligente y que tomó las medidas correctivas necesarias antes y después de los eventos que dieron vida a esta controversia, por lo que no estaba obligada a responder económicamente por los actos de sus empleados. Por su parte, el señor José Rivera se opuso al recurso presentado por la demandante y planteó que no se establecieron los elementos de hostigamiento sexual ni se demostró que la conducta imputada causara cambios en los términos y condiciones del empleo de la demandante. Además, alegó que, de concluirse que hubo tal hostigamiento, el patrono debía responder por tratarse de un caso de responsabilidad "absoluta".

El Tribunal de Apelaciones consolidó los recursos presentados individualmente por las partes y, por voz de su presidenta, el 30 de junio de 2008 dictó Resolución mediante la cual exoneró a Caribbean de responder por los actos de hostigamiento sexual cometidos por el señor Rivera.[2] Según el foro apelativo intermedio:

> Aunque la Ley 17, *supra*, parece imponer responsabilidad absoluta a los patronos por actos de hostigamiento sexual cometidos por sus agentes o supervisores no debe prevalecer esta interpretación. El principio de responsabilidad absoluta no es cónsono con el análisis que debe seguirse al aplicar esta ley. Por el contrario, debe considerarse el artículo 4 del mismo cuerpo de ley que dispone: "Para determinar si la

---

[2] El panel que atendió inicialmente este caso estaba compuesto por su presidenta, la juez Pesante Martínez, el juez Escribano Medina y la juez Pabón Charneco.

alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos". Asimismo, según se expresó en el *Informe de la Cámara de Representantes*, 23 de marzo de 1988, a las págs. 11 y 12, citando *Meritor Savings vs. Vinson*, 477 U.S. 57 (1986), **los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores.** Esta interpretación busca mantener un balance y equilibrio en la aplicación de esta ley, de modo que considera los hechos particulares de cada caso y las circunstancias en que ocurrieron, para impedir responsabilizar de manera absoluta y automática a los patronos por los actos de sus supervisores.

*Ortiz González v. Burger King*, KLAN08 0551, KLAN08 0567 y KLAN08 0579, en las págs. 25-26 (énfasis suplido).

Conforme a este criterio, el tribunal apelativo liberó de responsabilidad a Caribbean tras concluir que la empresa cumplió con sus responsabilidades legales al promover activamente una política de prevención y de corrección de actos de hostigamiento sexual en el empleo. Por tanto, responsabilizó exclusivamente al señor Rivera por sus actos y le ordenó a éste satisfacer por sí solo el pago de los honorarios. Sobre las acciones de la gerente Vázquez, el Tribunal mantuvo la responsabilidad impuesta a la compañía bajo el artículo 1803 del Código Civil. Además, dispuso que las costas serían satisfechas solidariamente por todos los demandados. Por último, en cuanto a la suma de $10,000 concedida como compensación por los daños ocasionados, el Tribunal concluyó que ésta era adecuada, mas procedió a duplicarla conforme al mandato expreso del artículo 11 de la Ley 17.

Aún inconforme, el 30 de marzo de 2009, el señor Rivera acudió oportunamente ante nosotros mediante recurso de *certiorari* para solicitar la revocación de la sentencia emitida por el foro intermedio. Planteó que el Tribunal de Apelaciones erró al determinar que incurrió en actos de hostigamiento sexual en su modalidad de ambiente hostil. Además, sostuvo que erró dicho Tribunal al confirmar los daños adjudicados y, en la alternativa, que la empresa Caribbean respondía solidariamente por dichos daños por mandato de la Ley 17.

Por su parte, el 24 de marzo de 2009, la señora Ortiz compareció ante nosotros mediante recurso de *certiorari* en el cual planteó que las sumas otorgadas estaban muy por debajo de la valoración objetiva de los perjuicios sufridos. Además, arguyó que erró el Tribunal de Apelaciones al revocar la imposición de responsabilidad solidaria a Caribbean y al dejar sin efecto la fijación de honorarios de abogado a dicho patrono.

El 18 de septiembre de 2009 denegamos el recurso presentado por el señor Rivera. Sin embargo, el 30 de octubre del mismo año reconsideramos nuestra decisión y expedimos el auto. El recurso de la señora Ortiz fue expedido el 8 de octubre del mismo año. El 18 de agosto de 2010 ordenamos la consolidación de ambos recursos. Con el beneficio de la comparecencia de todas las partes, resolvemos.

## II

### A

Es un principio rector de nuestro orden social, establecido en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, que la dignidad del ser humano es inviolable. A su amparo se prohíbe expresamente el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Además, también como derivado lógico del imperativo de la dignidad, nuestra Constitución protege a toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II, Secs. 1 y 8, Const. E.L.A., L.P.R.A., Tomo 1.

Cumpliendo con este mandato constitucional, la Asamblea Legislativa ha adoptado leyes que protegen la dignidad del ser humano en el contexto laboral. Entre éstas se aprobó la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155 *et seq.*, con el propósito de elevar el hostigamiento sexual en el empleo al mismo nivel jurídico que las otras modalidades de discrimen identificadas y proscritas en leyes anteriores. Exposición de Motivos de la Ley Núm. 17, 1988 Leyes de Puerto Rico 80. Esta ley prohíbe el hostigamiento sexual en el empleo y lo declara como una forma de discrimen por razón de género que atenta contra la dignidad humana. 29 L.P.R.A. sec. 155. *Albino v. Ángel Martínez, Inc.*, 171 D.P.R. 457, 470 (2007).

El Art. 3 de la Ley Núm. 17 define el hostigamiento sexual en el empleo de la manera siguiente:

El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.  29 L.P.R.A. sec. 155b.

*Id.* en la pág. 471.

El hostigamiento sexual en el empleo tiene, pues, dos modalidades.  Los incisos (a) y (b) de la definición citada se refieren a la modalidad de hostigamiento equivalente o *quid pro quo*, mientras que el inciso (c) recoge la modalidad de hostigamiento sexual por ambiente hostil.  *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643, 653 (1994).  La determinación de si determinada conducta en el empleo constituye hostigamiento sexual, en cualquiera de sus dos modalidades, se hará considerando la totalidad de las circunstancias y los hechos particulares de cada caso.  29 L.P.R.A. sec. 155c.  *Albino*, 171 D.P.R. en la pág. 471.

Hemos resuelto que la modalidad de hostigamiento equivalente o *quid pro quo* se produce cuando el sometimiento o rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo.  El demandante debe, por lo tanto, probar que el

sometimiento o el rechazo a la solicitud de favores sexuales y al sufrimiento de avances de igual tipo fue la causa de una decisión adversa en cuanto a una condición o un término de su empleo. *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117, 132 (1990). *Véase además S.L.G. Afanador v. Roger Electric Co., Inc.*, 156 D.P.R. 651 (2002). Si es despedido u obligado a renunciar, el demandante debe establecer que las deficiencias en el desempeño de sus funciones laborales, por las cuales fue despedido o que llevaron a su renuncia, son consecuencia directa del ambiente hostil en el que se vio obligado a trabajar. Deberá probar también que estuvo sujeto a hostigamiento sexual por ambiente hostil. *Albino*, 171 D.P.R. en las págs. 471-472. *Sup. Amigo, Inc.*, 126 D.P.R. en la pág. 133. *Véase además In re Robles Sanabria*, 151 D.P.R. 483, 501 (2000).

La modalidad de hostigamiento sexual por ambiente hostil se produce cuando la conducta sexual hacia una persona tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear un ambiente laboral intimidante, hostil u ofensivo. La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha conducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las

condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración, y la conducta y circunstancias personales de la alegada víctima. *Albino,* 171 D.P.R. en la pág. 472*; Sup. Amigo, Inc.*, 126 D.P.R. en las págs. 131-132. *Véanse además In re: Robles Sanabria*, 151 D.P.R. en las págs. 500-501; *S.L.G. Afanador*, 156 D.P.R. 651.

Una vez se determina que una conducta constituye hostigamiento sexual en el empleo, la Ley 17 establece cómo responsabilizar o exonerar al patrono por las consecuencias de la conducta ilegal. *Albino*, 171 D.P.R. en la pág. 472. La responsabilidad patronal por actos de sus empleados dependerá de la relación existente entre la persona que hostiga y la hostigada.

Así, el artículo 6 de la Ley 17 dispone que **"[u]n patrono será responsable por los actos de hostigamiento sexual entre empleados, en el lugar de trabajo, si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación"**. 29 L.P.R.A. sec. 155e (énfasis suplido). Conforme a este artículo, cuando el empleado que hostiga se encuentra en la misma jerarquía que la empleada hostigada sexualmente, debemos aplicar el estándar tradicional de negligencia y el patrono sólo responderá si sabía o debía saber de la conducta ilegal, y no tomó las

medidas necesarias para prevenirla y corregirla inmediatamente.

En cambio, cuando el hostigador es un agente o supervisor de la persona hostigada, debemos regirnos por lo dispuesto en el artículo 5 de la Ley 17, según el cual **"[u]n patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores *independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta"*.** 29 L.P.R.A. sec. 155d (énfasis suplido). Resulta evidente que la responsabilidad impuesta en este caso es de carácter vicario habida cuenta de que el patrono vendrá obligado a responder legalmente por los actos de terceras personas por virtud de la relación existente entre él y la persona que lleva a cabo el acto de hostigamiento sexual.

A pesar de la claridad empleada por la Asamblea Legislativa en la redacción del artículo 5, el Tribunal de Apelaciones resolvió que la Ley 17 no estableció realmente una responsabilidad vicaria de la cual no pudiera desvincularse el patrono. Según el foro apelativo intermedio, la lectura de este artículo debía acomodarse a lo dispuesto por la Corte Suprema de los Estados Unidos en *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), en torno a que los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores. Con el propósito de evaluar adecuadamente las

bases en que se sostiene el dictamen recurrido, procedemos a analizar el trato conferido al hostigamiento sexual en el empleo en el ámbito federal.

B

Contrario a lo que sucede en nuestra jurisdicción, a nivel federal no existe legislación específica que prohíba expresamente el hostigamiento sexual en el empleo. No obstante, esta protección surge del Título VII de la Ley Federal de Derecho Civiles, 42 U.S.C. secs. 2000e-1 a 2000e-17 (1964), la cual proscribe el uso de prácticas discriminatorias en el empleo y veda específicamente el discrimen por razón de raza, color, religión, origen nacional y sexo. Tras la aprobación de la Ley de Derechos Civiles en 1964, los tribunales federales dejaron claro la intención congresional de "eliminar toda barrera artificial, arbitraria e innecesaria, específicamente cuando dichas barreras indudablemente operan para discriminar a base de una clasificación de tipo racial o de otro tipo igualmente impermisible". *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117, 125 (1990), citando *Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971) (traducción nuestra).

Sin embargo, aun con el beneficio de pronunciamientos como éste, los tribunales de instancia comúnmente rehusaban reconocer las causas de acción presentadas por empleadas que alegaron hostigamiento. *Véanse Corne v. Bausch & Lomb, Inc.,* 390 F. Supp. 161 (D. Ariz. 1975); *Miller v. Bank of America,* 418 F. Supp. 233 (N.D. Calif. 1976); *Tomkins v.*

*Public Service Elec. & Gas Co.*, 422 F. Supp. 553 (D. N.J. 1976); *Fisher v. Flynn*, 598 F. 2d 663 (1er Cir. 1979); *véase además Sup. Amigo, Inc.*, 126 D.P.R. en las págs. 125-126.

Para atender la falta de uniformidad en la adjudicación de casos en donde se alegaba la existencia de hostigamiento sexual en el empleo, en 1980, la Comisión de Igualdad de Oportunidades en el Empleo (E.E.O.C., por sus siglas en inglés) emitió unas guías que sirvieron de norte a los tribunales. *Id.* en la pág. 126. Los primeros incisos de estas guías sobre discrimen por razón de sexo leían de la siguiente manera:

(a) El hostigamiento sobre la base de sexo es una violación a la Sec. 703 del Título VII. Avances sexuales que no son bien recibidos, solicitudes de favores sexuales y cualquier otra conducta física o verbal de naturaleza sexual, constituye hostigamiento sexual cuando (1) el aceptar tal conducta es explícita o implícitamente un término o condición para el empleo de un individuo, (2) el aceptar o rechazar dicha conducta por parte de un individuo se utiliza como base para tomar decisiones sobre empleo que afectan a tal individuo o (3) dicha conducta tiene el propósito o efecto de interferir irrazonablemente con la realización del trabajo de un individuo o crear un ambiente de trabajo intimidante, hostil u ofensivo.

(b) Al determinar si una alegada conducta constituye un hostigamiento sexual, la Comisión considerará el récord completo y la totalidad de las circunstancias, tales como la naturaleza de las proposiciones sexuales y el contexto en que ocurrieron los alegados incidentes. La determinación de legalidad de una acción particular se hará a base de los hechos y caso por caso.

(c) Al aplicar los principios generales del Título VII, **un patrono, agencia de colocaciones, comité de aprendices u organización laboral (en lo sucesivo mencionados colectivamente**

> como "patrono") es responsable por sus actos y
> por aquéllos de sus agentes y supervisores con
> respecto al hostigamiento sexual
> *independientemente de si los actos específicos
> de los cuales se protesta estuviesen
> autorizados o hasta prohibidos por el patrono
> e independientemente de si el patrono conocía
> o debía conocer de su existencia.* La Comisión
> examinará las circunstancias de la relación
> laboral específica y de los trabajos
> realizados por el individuo para determinar si
> un individuo actúa en capacidad de supervisor
> o de agente.

*Id. citando a* 29 C.F.R. sec. 16.04.11 (1983) (traducción y énfasis suplidos).

A raíz de la aprobación de estas guías, dos (2) importantes opiniones de los tribunales de apelaciones de Estados Unidos insuflaron nuevos bríos a la definición de hostigamiento sexual. En *Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir. 1981), la demandante alegó que luego de rechazar varias proposiciones sexuales de varios de sus supervisores, comenzó a recibir críticas en su trabajo y se le negó en diversas ocasiones la posibilidad de recibir un ascenso. El Tribunal, fundamentándose mayormente en las guías promulgadas por le E.E.O.C y la opinión de *Barnes v. Castle*, 561 F.2d 983 (D.C. Cir. 1977), concluyó que cuando, sin una justificación válida, el sexo constituye un factor determinante en una decisión relacionada con el empleo de una persona, existe discrimen por razón de sexo. *Sup. Amigo, Inc.*, 126 D.P.R. en las págs. 127-128. Un (1) año más tarde, *Henson v. City of Dundee*, 682 F.2d 897 (11mo Cir. 1982), reafirmó la doctrina establecida en *Bundy*, en cuanto a que la creación de un ambiente de trabajo hostil por medio de hostigamiento sexual puede, por sí solo, servir

de fundamento para una reclamación por discrimen por razón de sexo, al amparo de las disposiciones del Título VII de la Ley Federal de Derecho Civiles de 1964. *Sup. Amigo, Inc.*, 126 D.P.R. en la pág. 128.

Luego de estas opiniones, los tribunales se mostraron más receptivos a un enfoque de mayor protección. *Katz v. Dole*, 709 F.2d 251 (4to Cir. 1983); *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524 (11mo Cir. 1983); *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3er Cir. 1983); *Horn v. Dukes Homes, Div. of Windsor Mobile Homes*, 755 F2d 599 (7mo Cir. 1985); *King v. Palmer*, 778 F.2d 878 (Cir. D.C. 1985); *Moylan v. Maries County*, 792 F.2d 746 (8vo Cir. 1986); *Sup. Amigo, Inc.*, 126 D.P.R. en la pág. 129.

Eventualmente, la proliferación de decisiones en los tribunales de apelaciones allanó el camino para que la Corte Suprema federal se pronunciara al respecto en *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986). *Sup. Amigo, Inc.*, 126 D.P.R. en la pág. 129. En este caso paradigmático, una empleada del banco Meritor Savings presentó demanda al amparo del Título VII de la Ley de Derechos Civiles contra su patrono, para ser compensada por los daños sufridos como consecuencia de los actos discriminatorios realizados por su supervisor. La empleada trabajó en el banco desde 1974 hasta 1978, fecha en que fue despedida por alegadamente haber abusado de una licencia por enfermedad que le había sido concedida. Luego demandó al banco y a su supervisor. Alegó que a insistencias de este último, y por temor a perder su trabajo, accedió a tener con

él relaciones sexuales. Durante los cuatros (4) años que laboró en el banco tuvo relaciones íntimas con su supervisor en unas cuarenta (40) o cincuenta (50) ocasiones. Además, indicó que éste la seguía al baño de las damas, le coqueteaba frente a otros empleados y la obligó en varias ocasiones a sostener relaciones involuntariamente. Finalmente, aclaró que nunca notificó la conducta del supervisor por miedo a perder su trabajo.

El tribunal de distrito desestimó la demanda bajo el razonamiento de que si la empleada y el supervisor sostuvieron relaciones sexuales íntimas, éstas fueron totalmente voluntarias y sin ninguna relación con su permanencia en el empleo. En vista de ello, negó la existencia de hostigamiento sexual y, por consiguiente, la posible violación al Título VII de la Ley Federal de Derechos Civiles. *Sup. Amigo, Inc.*, 126 D.P.R. en las págs. 129-130. El tribunal de apelaciones emitió sentencia mediante la cual revocó el dictamen recurrido y resolvió que un patrono respondía de manera vicaria por los actos de hostigamiento sexual en el empleo cometidos por sus supervisores.

La Corte Suprema confirmó la sentencia del foro apelativo y resolvió que un demandante puede establecer una violación al Título VII de la Ley de Derechos Civiles mediante prueba de que actos de discrimen por razón de sexo han generado un ambiente de trabajo hostil o abusivo. Estos actos deben ser lo suficientemente severos como para alterar las condiciones de empleo y crear un ambiente de trabajo

desfavorable para la víctima. *Meritor Savings*, 477 U.S. en las págs. 66-67. La Corte rechazó el argumento del peticionario en torno a que la empleada debía probar haber sufrido una pérdida económica para poder ser compensada al amparo del Título VII. Además, aclaró que para determinar si los acercamientos sexuales de un supervisor constituyen hostigamiento bajo el Título VII, la pregunta correcta es si la demandante, mediante su conducta, demostró que las alegadas proposiciones sexuales no fueron bien recibidas, y no si su participación real en la relación sexual fue "voluntaria". *Id.* en la pág. 68.

En cuanto a la responsabilidad del patrono por los actos de hostigamiento sexual perpetrados por sus supervisores, la Corte Suprema modificó la sentencia del foro apelativo y rechazó expresamente establecer una norma definitiva sobre el asunto. Sin embargo, concluyó que la decisión del Congreso estadounidense de incluir en la definición del término *patrono* a cualquier *agente* del patrono, 42 U.S.C. § 2000e(b), evidenciaba la intención de establecer algún límite a la responsabilidad de los patronos por los actos discriminatorios de sus empleados bajo el Título VII. *Meritor Savings*, 447 U.S. en la pág. 72. Por tal razón, resolvió que el tribunal apelativo erró el concluir que los patronos siempre son responsables automáticamente por el hostigamiento sexual de sus supervisores.

Con este proceder, la Corte Suprema optó por distanciarse de las guías establecidas por la E.E.O.C. en

cuanto a la responsabilidad patronal, las cuales imponían responsabilidad vicaria al patrono independientemente de si los actos específicos de los cuales se protestaba estaban autorizados o hasta prohibidos por el patrono e independientemente de si el patrono conocía o debía conocer de su existencia. El Juez Marshall emitió una opinión concurrente, a la cual se unieron tres jueces, en la que plasmó su insatisfacción con la distinción realizada por la mayoría. Según estos jueces, procedía adoptar en su totalidad la interpretación establecida por la E.E.O.C. en sus guías (tal y como se hizo para el resto de la opinión), las cuales meramente recogían lo resuelto constantemente por dicha comisión y por los tribunales, en torno a que los patronos son responsables por violaciones al Título VII por parte de sus supervisores, independientemente de su conocimiento o de cualquier otro factor mitigante. 45 Fed. Reg. 74676 (1980). *Meritor Savings*, 477 U.S. en la pág. 75.[3]

En 1998, doce (12) años después de *Meritor Savings, la* Corte Suprema resolvió *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), y *Faraguer v. City of Boca Ratón*, 524 U.S. 775 (1998).[4] En ambos casos, una empleada renunció a su empleo y presentó demanda ante una corte

_____

[3] Curiosamente, el Juez Asociado Stevens emitió una breve expresión concurrente en la que hizo constar que se unía tanto a la opinión mayoritaria como a la concurrente, por entender que no existía incongruencia alguna entre ambas posturas.
[4] Aunque atendidos por jueces distintos, ambos casos fueron publicados el mismo día y formulados como casos complementarios.

federal de distrito por alegado hostigamiento sexual en su modalidad de ambiente hostil por parte de un supervisor, en violación al Título VII de la Ley de Derechos Civiles. Ninguna de las dos (2) empleadas notificó a la gerencia sobre los actos de hostigamiento previo a su renuncia.

En *Ellerth*, el tribunal de distrito había resuelto que la conducta del supervisor había creado un ambiente de trabajo hostil. No obstante, dictó sentencia sumaria a favor del patrono tras concluir que éste no tenía conocimiento sobre la conducta del hostigador. *Ellerth*, 524 U.S. en la pág. 749. En *Faraguer*, en cambio, el tribunal de distrito halló responsable al patrono tras concluir que, a pesar de haber adoptado una política contra el hostigamiento sexual, el patrono falló en comunicarla efectivamente al departamento en el cual laboraban la empleada y el supervisor. *Faraguer*, 524 U.S. en la pág. 781-783.

Utilizando un lenguaje idéntico en ambas opiniones, la Corte Suprema estableció la siguiente norma sobre responsabilidad patronal por actos de hostigamiento sexual de supervisores sobre sus subalternos:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, an employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see *Fed. Rule Civ. Proc. 8(c)*. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage

> of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as a discharge, demotion, or undesirable reassignment.

*Ellerth*, 524 U.S. en la pág. 765; *Faraguer*, 524 U.S. en las págs. 807-808.[5]

Tras estos casos, la norma federal actual es que un patrono responde vicariamente por los actos de hostigamiento sexual que creen un ambiente de trabajo hostil, cometidos por sus supervisores o agentes sobre empleados de menor jerarquía institucional.[6] No obstante, cuando no se haya tomado acción laboral concreta contra una empleada como consecuencia de un rechazo a los acercamientos sexuales a los que estuvo sujeta *(e.g.,* un despido, un descenso o un

---

[5] El Juez Asociado Thomas emitió opinión disidente en ambos casos, a la cual se unió el Juez Asociado Scalia. Para los disidentes, se debe aplicar el estándar tradicional de negligencia, de manera que un patrono responda por los actos de hostigamiento sexual de un supervisor sólo si la demandante logra probar que el patrono incurrió en negligencia al permitir la conducta del supervisor.

[6] Recientemente, la Corte Suprema federal reafirmó las determinaciones en *Ellerth* y Faraguer al tiempo en que determinó que "supervisor", para efectos de determinar la responsabilidad vicaria del patrono bajo el Título VII, es aquel que puede tomar acciones tangibles en el empleo contra el empleado hostigado. Vance v. Ball State Univ., 570 U.S. __ (2013).

traslado indeseado), el patrono podrá quedar relevado de responsabilidad si establece, mediante preponderancia de la prueba, que: (1) tomó las medidas necesarias para prevenir y corregir inmediatamente cualquier acto de hostigamiento sexual *y* que (2) la empleada demandante, *de manera irrazonable*, no tomó ventaja de ninguno de los mecanismos preventivos u oportunidades correctivas provistas por el patrono, *ni aprovechó otras oportunidades para evitar el daño*.

Al pautar esta norma, la Corte Suprema reconoció expresamente estar atado por sus pronunciamientos en *Meritor Savings* no sólo por la importancia de la doctrina de *stare decicis*, sino, además, porque el Congreso enmendó el Título VII de la Ley de Derechos Civiles, luego de decidirse el caso, con el fin de aumentar las compensaciones monetarias a concederse, así como para modificar algunas bases estatutarias en las que se había amparado la propia Corte al interpretar la ley, mas mantuvo intacta la norma pautada en *Meritor Savings*. Según el Tribunal, esto era indicio de que el Congreso había avalado su interpretación en torno a los posibles límites a la responsabilidad patronal. *Véase Faraguer*, 524 U.S. en la pág. 804, n. 4.

Por esta razón, a pesar de que la norma declara afirmativamente que un patrono responde vicariamente por actos de hostigamiento sexual de sus supervisores, también se crea una defensa afirmativa que le permite al patrono ser relevado de responsabilidad siempre que se cumplan ambos requisitos establecidos. Es decir, para que un

patrono quede relevado de responsabilidad en la esfera federal, no es suficiente que muestre que tomó medidas preventivas o correctivas inmediatas. Se requiere **además,** que la empleada hostigada debe haber actuado de manera irrazonable bajo la totalidad de las circunstancias al no hacer uso de los procedimientos establecidos por el patrono para atender el asunto, ni aprovechar otras oportunidades legítimas y razonables para evitar el daño ("failed to take advantage . . . to avoid harm otherwise"). Mediante la creación de esta defensa afirmativa, la Corte Suprema reformuló la norma aplicable para evaluar la responsabilidad patronal por actos de hostigamiento sexual cometidos por supervisores en violación al Título VII de la Ley de Derechos Civiles, sin contravenir sus pronunciamientos previos en cuanto a que el patrono no siempre será responsable automáticamente por el hostigamiento sexual de sus supervisores, según plasmado en *Meritor Savings.*

C

Tras evaluar el derecho vigente en nuestra jurisdicción sobre la protección contra el hostigamiento sexual en el empleo, así como el derecho federal al respecto, es evidente que el Tribunal de Apelaciones erró al exonerar de responsabilidad al patrono codemandado en este caso. Con su proceder, el foro apelativo intermedio obvió completamente la letra clara del artículo 5 de la Ley 17, el cual dispone lo siguiente:

> Un patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores **independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta.**

29 L.P.R.A. sec. 155 (énfasis suplido).

El artículo 14 del Código Civil dispone expresamente que "[c]uando la ley es clara, libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". 31 L.P.R.A. sec. 14. Es por ello que este Tribunal ha reiterado en innumerables ocasiones que el principio de hermenéutica que establece que "si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa". *Véanse* Cruz *Parrilla v. Dpto. de la Vivienda*, 184 D.P.R. 393 (2012); *Soc. Asist. Legal v. Ciencias Forenses*, 179 D.P.R. 849, 862 (2010); *Calderón v. Adm. de los Sistemas de Retiro*, 129 D.P.R. 1020, 1033-1034 (1992). Específicamente en *Sindicato de Bomberos de Puerto Rico v. Cuerpo de Bomberos de Puerto Rico*, 180 D.P.R. 723, 749 (2011) (Rivera García, J.), dijimos:

> El lenguaje claro y explícito de un estatuto no debe ser tergiversado, mucho menos malinterpretado o sustituido. La función de la Rama Judicial no es legislar sino interpretar las leyes aprobadas por la Rama Legislativa y constatar que no estén reñidas con la Constitución.

Evidentemente, conforme al lenguaje diáfano empleado en la redacción de la Ley 17, no puede existir duda alguna en

torno a que el artículo 5 impone una responsabilidad propiamente vicaria a todo patrono por actos de hostigamiento sexual llevados a cabo por sus supervisores. Como puede apreciarse fácilmente, el artículo en cuestión es una traducción literal del inciso (c) de las guías de la E.E.O.C. Tal y como reconoce tanto la opinión mayoritaria como la concurrente de *Meritor Savings*, las guías establecían una norma de responsabilidad vicaria de la cual no podían desvincularse los patronos mediante actos afirmativos para prevenir o remediar inmediatamente los actos de hostigamiento sexual de sus supervisores. El hecho de que la Corte Suprema de Estados Unidos federal se haya distanciado de las guías a la hora de interpretar la protección contra el hostigamiento sexual bajo el Título VII de la Ley Federal de Derechos Civiles no dispone en absoluto de la controversia ante nuestra consideración, pues **la protección contra el hostigamiento sexual en nuestro ordenamiento no proviene únicamente de esta ley federal, sino también de nuestra Constitución y, particularmente, de ley especial que hoy interpretamos: la Ley 17.**[7]

_____

[7] A la misma conclusión llegó la Corte Suprema de California en *State Department of Health Services v. Superior Court (McGinnis)*, 31 Cal. 4th 1026 (2003). La controversia en ese caso era idéntica a la que consideramos hoy: si, bajo la ley californiana, un patrono respondía de manera vicaria por los actos de hostigamiento sexual cometidos por sus supervisores. Tras discutir la doctrina federal sobre hostigamiento sexual, el máximo foro de California resolvió que la *Fair Employment and Housing Act* (FEHA) de California imponía tal responsabilidad a los patronos. Explicó que la redacción de la FEHA se tomó literalmente de las guías promulgadas por la E.E.O.C., por lo que la doctrina federal respecto a este asunto no era vinculante y no podía cuestionarse seriamente la

responsabilidad del patrono. Por haberse tomado de las guías de la E.E.O.C., el lenguaje de la FEHA es una traducción literal al inglés del utilizado por nuestra Asamblea Legislativa en la Ley 17.

Luego de reconocer que los patronos responden vicariamente por todos los actos de hostigamiento sexual de sus supervisores, la Corte californiana aclaró que, por tratarse de responsabilidad vicaria y no absoluta, la propia conducta de un demandante podría limitar la cuantía de daños recobrables o incluso eliminarlos por completo. El Tribunal se amparó en la doctrina de mitigación de daños, la cual le exige a un demandante ser diligente a la hora de reclamar sus derechos de manera que el causante no se vea obligado a responder por el agravamiento de daños que el demandante pudo haber evitado de haber actuado razonablemente. En ese sentido, adoptó los requisitos de la defensa afirmativa creada por la Corte Suprema feferal en *Ellerth* y *Faraguer*, como parte de una nueva norma más detallada para evaluar si procedía reducir la cuantía a ser resarcida por el patrono. Conforme a la nueva norma, el patrono debe demostrar (1) que tomó todas las medidas necesarias para prevenir y corregir inmediatamente el ambiente de hostigamiento sexual en el lugar de empleo; (2) que el demandante, de manera irrazonable, no hizo uso de ninguno de los mecanismos preventivos u oportunidades correctivas provistas por el patrono, ni aprovechó otras oportunidades para evitar el daño; **y (3) que el uso razonable de los procedimientos establecidos por el patrono habría prevenido efectivamente al menos parte de los daños sufridos por el empleado.** De esta forma, el Supremo de California enfocó la discusión no en torno a la responsabilidad del patrono, sino a la compensación en daños que debía concederse según la razonabilidad de las acciones de las partes. El Tribunal fue extremadamente cauteloso y reconoció que la nueva norma no implicaba que toda víctima de hostigamiento sexual tuviera que revelar **inmediatamente** cualquier acto sufrido para recobrar la cuantía completa por los daños sufridos. La razonabilidad de la no divulgación de un acto de hostigamiento, o el hecho de que no se hayan aprovechado los mecanismos oficiales provistos, deberá evaluarse bajo la totalidad de las circunstancias de cada caso y tomando en consideración la naturaleza delicada e íntima que permea esta problemática.

La norma creada por la Corte Suprema de California no es incompatible con nuestro ordenamiento jurídico. Al igual que en aquella jurisdicción, nuestra ley impone responsabilidad propiamente vicaria al patrono por actos de hostigamiento sexual de sus supervisores. No obstante, ello no impide que un patrono presente la defensa afirmativa de mitigación de daños, siempre que logre probar a satisfacción del tribunal los tres (3) requisitos enumerados anteriormente. En el caso ante nuestra consideración, los hechos demuestran que la demandante

Como señalamos anteriormente, el Tribunal de Apelaciones concluyó que:

> Aunque la Ley Núm. 17, *supra*, parece imponer responsabilidad absoluta a los patronos por actos de hostigamiento sexual cometidos por sus agentes o supervisores no debe prevalecer esta interpretación. El principio de responsabilidad absoluta no es cónsono con el análisis que debe seguirse al aplicar esta ley. Por el contrario, debe considerarse el artículo 4 del mismo cuerpo de ley que dispone: 'Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. …' Asimismo, según se expresó en el *Informe de la Cámara de Representantes*, 23 de marzo de 1988, a las págs. 11 y 12, citando a *Meritor savings v. Vinson*, 477 U.S. 57 (1986), los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores.

*Ortiz González v. Burger King*, KLAN08 0551, KLAN08 0567 y KLAN08 0579, en las págs. 25-26.

Esta conclusión es errada por tres razones fundamentales. Veamos.

En primer lugar, confunde el propósito del artículo 4 de la Ley 17, en el cual se establece el estándar aplicable para evaluar si cierta conducta constituye hostigamiento sexual en el empleo (análisis bajo la totalidad de las circunstancias), con el del artículo 5, en el cual se pauta el nivel de responsabilidad atribuible al patrono por actos de hostigamiento sexual llevados a cabo por sus supervisores o agentes (responsabilidad vicaria). Cierto es que la

---

aprovechó los mecanismos provistos por el patrono para lidiar con el problema de hostigamiento. Tanto es así, que el proceso culminó con el despido indirecto del supervisor demandando. Por tanto, no procede reducir la cuantía de daños conforme a la doctrina de mitigación de daños.

evaluación de si un acto constituyó o no hostigamiento sexual se hará bajo la totalidad de las circunstancias de cada caso, pero ello no tiene nada que ver con el nivel de responsabilidad que deberá asumir el patrono por dichos actos. Esa determinación dependerá, como hemos visto, de la relación existente entre el hostigador y la persona hostigada. De aceptarse la conclusión del tribunal apelativo, se tornaría innecesaria la distinción hecha por el legislador entre el los artículos 5 y 6 de la Ley 17, pues, independientemente de que el hostigador fuera supervisor o empleado del mismo nivel jerárquico que la hostigada, aplicaría el mismo estándar (negligencia).

En segundo lugar, recurre innecesariamente al historial legislativo para interpretar una ley cuyo mandato es inequívoco, en contravención a las normas de hermenéutica reiteradas continuamente por este Tribunal. Nos reiteramos, cuando la ley es clara y no es ambigua, no hay necesidad de mirar más allá de su letra en búsqueda de la intención legislativa. Debemos descubrir y darle efecto a la intención expresada mediante la letra de la ley. *Romero Barceló v. E.L.A.*, 169 D.P.R. 460, 477 (2006), citando a *Departamento de Hacienda v. Telefónica*, 164 D.P.R. 195, 215 (2005). *Véase además* N.J. Singer, 2A *Sutherland, Statutes and Statutory Construction* Sec. 48.6, en las págs. 439, 442-443 (2000).

En tercer lugar, el Tribunal de Apelaciones ignoró por completo las expresiones que sobre este tema vertiera este Foro desde hace más de dos (2) décadas. En *Rodríguez*

*Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117 (1990), esta Curia tuvo la oportunidad de expresarse en torno a la protección contra al hostigamiento sexual en el empleo bajo la Constitución de Puerto Rico y bajo la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146-151. A pesar de que la Ley 17 ya estaba en vigor para ese entonces, los hechos del caso ocurrieron previo a su aprobación, por lo que el Tribunal no se refirió explícitamente a ella. Tras discutir tanto el derecho puertorriqueño como el federal, el Tribunal se expresó de la siguiente manera:

> Aclarados estos extremos, nos resta determinar cuál debe ser la medida (standard) de responsabilidad aplicable al patrono en casos de hostigamiento sexual por uno de sus agentes o supervisores. En Meritor Savings Bank v. Vinson, supra, la opinión mayoritaria sugiere, sin resolverlo, que la responsabilidad del patrono debe ser absoluta en casos de hostigamiento sexual (quid pro quo), mientras que de acuerdo con la modalidad de ambiente hostil lo será sólo si conocía, o razonablemente debió conocer, lo que estaba ocurriendo y no hizo nada para corregirlo o evitarlo. [8] **No es necesario incorporar este criterio de responsabilidad dual a nuestra jurisdicción.** [9]

---

[8] Esta interpretación quedó modificada por *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), y *Faraguer v. City of Boca Ratón*, 524 U.S. 775 (1998), mediante los cuales la Corte Suprema aclaró la norma aplicable para determinar la responsabilidad patronal independientemente de la modalidad de hostigamiento hostil de la que se trate.

[9] En aquel entonces citamos como fuentes excelentes de análisis y crítica a la norma de *Meritor Savings* los siguientes escritos: *Employer Liability Under Title VII for Sexual Harassment after Meritor Savings Bank v. Vinson*, 87 Colum. L. Rev. 1258 (1987). Para críticas a la doble medida, citamos J.L. Dolkart y E.L. Malchow, *Sexual Harassment in the Workplace: Expanding Remedies*, 23 Tort & Ins. L.J. 181 (1987); *Between the Boss and the Hard Place: A Consideration of Meritor Savings, FSB v. Vinson and the Law of Sexual Harassment*, 67 B.U.L. Rev. 445 (1987); y *Meritor Savings Bank v. Vinson: Sexual Harassment at Work*, 10 Harv. Women's L.J. 203 (1987).

*Sup. Amigo, Inc.*, 126 D.P.R. en la pág. 133 (citas omitidas) (énfasis suplido).

A pesar de este reconocimiento por parte de la mayoría, el entonces Juez Asociado señor Hernández Dentón entendió que el Tribunal se abstuvo innecesariamente de realizar un pronunciamiento claro y sin ambages en torno al nivel de responsabilidad de los patronos por actos de hostigamiento sexual cometidos por sus supervisores o agentes. Por tal razón, emitió una opinión concurrente en la que, luego de discutir el desarrollo de la lucha de la mujer para incorporarse a los modos de producción de nuestra sociedad, así como la necesidad de erradicar por completo el discrimen por razón de sexo en el empleo, expresó lo siguiente:

> Conceptualizado el hostigamiento sexual como una manifestación del discrimen por razón de sexo, la Ley Núm. 100, supra, contiene los criterios de responsabilidad aplicables al patrono que incurre en violación. **Contrario a la experiencia en Estados Unidos, esta ley impone responsabilidad al patrono en todos los casos de hostigamiento sexual por sus agentes, supervisores o representantes.** Independientemente del tipo de hostigamiento

---

Para un análisis más reciente sobre el tema, especialmente a raíz de las decisiones de la Corte Suprema en *Ellerth* y *Faraguer*, véanse E. Jacob Lindstrom, *All Carrots and No Sticks: Moving beyond the Misapplication of Burlington Industries, Inc., v. Ellerth*, 21 Hasting's Women's L.J. 111 (2010); Lauren P. Gearty, *Labor and Employment Law—Scope of Faraguer-Ellerth Affirmative Defense to Vicarious Liability Not Defined by Employer's Own Sexual-Harassment Policy— Chaloult v. Insterstate Brands Corp.,* 540 F.3d 64 (1st Cir. 2008), 42 Sufflok U.L. Rev. 399 (2009); Margaret E. Johnson, *"Avoiding Harm Otherwise": Reframing Women Employees' Responses to the Harms of Sexual Harassment*, 80 Temp. L. Rev. 743 (2007); Glenn George, T*heory and Practice: Employer Liability for Sexual Harassment*, 13 Wm. & Mary J. Women & L. 727 (2007); y Susan D. Carle, *Acknowledging Informal Power Dynamics in the Workplace: A Proposal for Further Development of the Vicarious Liability Doctrine in Hostile Environment Sexual Harassment Cases*, 13 Duke J. Gender L. & Pol'y 85 (2006).

sexual, la citada ley impide que un patrono establezca las condiciones o privilegio o "limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo que afecten su status como empleado. . .". (Énfasis suplido.) 29 L.P.R.A. sec. 146. Cualquier tipo de condición o privilegio, o cualquier tipo de limitación que afecte a un empleado por razón de su sexo está proscrito por el estatuto y el patrono es responsable por la violación en que incurrió o en que incurrieron sus supervisores o agentes. Como es el patrono quien ejerce el mayor control sobre los supervisores y quien establece las reglas en el lugar de trabajo, la legislación le impone la responsabilidad sobre los actos de aquéllos a quienes seleccionó para dirigir las operaciones.

Esta norma de responsabilidad ha sido refrendada por el legislador en la ley que declara el discrimen por sexo una práctica ilegal del empleo, Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 et seq.), **y la que amplía la prohibición de hostigamiento sexual en el trabajo, Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155 et seq.).** Ambos estatutos son instrumentos adicionales que tiene la mujer obrera para protegerse en los talleres de trabajo. La Ley Núm. 17, supra, extiende la protección contra el hostigamiento entre empleados y personas no empleadas por el patrono.

**En estas circunstancias procede que, a la luz de estas disposiciones, esta Curia defina el ámbito de la responsabilidad patronal y no posponga para otra ocasión unos pronunciamientos sobre el área más neurálgica de la legislación contra el discrimen. Nos preocupa que el análisis inconcluso de la . . . opinión del Tribunal pueda dar lugar a una interpretación del derecho aplicable a base de los criterios de responsabilidad patronal sugeridos en Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). Nuestra legislación no provee estas dos (2) vertientes de responsabilidad y la indefinición del Tribunal significa que tendrá que ser en otra ocasión donde nos pronunciemos sobre estos extremos. . . .**

*Sup. Amigo, Inc.*, 126 D.P.R. en las págs. 142-143 (énfasis suplido).

Luego de veintidós (22) años de espera, acogeríamos los pronunciamientos esbozados en *Sup. Amigo*, Inc.*,* por el hoy Juez Presidente y **resolveríamos inequívocamente que, conforme al claro mandato recogido en el artículo 5 de la Ley 17, todo patrono responde vicariamente por los actos de hostigamiento sexual realizados por sus agentes o supervisores dirigidos hacia empleados de menor jerarquía, independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta.**

Lo que hoy planteamos de manera explícita es cónsono con la forma en que este Tribunal ha atendido, desde la aprobación de la Ley 17, todos los casos de hostigamiento sexual en el empleo presentados ante sí. Por ejemplo, en *Rosario Toledo v. Distribuidoras Kikuet, Inc.,* 151 D.P.R. 634 (2000), el Tribunal tuvo que resolver si un supervisor que hostigó sexualmente a una empleada bajo su autoridad respondía por sus actos o si, en cambio, la responsabilidad recaía exclusivamente sobre el patrono de ambos. El argumento del supervisor en torno a que la intención legislativa fue responsabilizar exclusivamente al patrono se basó parcialmente en interpretaciones federales del Título VII. Tras rechazar como un contrasentido el argumento del supervisor, este Foro reconoció que "[l]a legislación nuestra –que es objeto de examen en este caso [la Ley 17]— es mucho más abarcadora que el mencionado estatuto federal [Título VII de la Ley de Derechos Civiles], ya que incluye,

no sólo toda clase de patronos independientemente de la cantidad de empleados que tenga, sino también a sus supervisores, oficiales, administradores y agentes. Por lo tanto, tales decisiones [federales] no son aplicables al caso de marras". *Id.* en la pág. 644. En este caso, la responsabilidad vicaria del patrono por actos de sus supervisores y agentes se dio por sentado.

Asimismo, en *Albino Agosto v. Martínez*, 171 D.P.R. 457 (2007), un caso en el que delineamos los contornos de la obligación patronal de tomar las medidas inmediatas y apropiadas para corregir cualquier acto de hostigamiento sexual *entre empleados*, la discusión del derecho aplicable recalcó nuevamente la distinción entre la doctrina federal y la nuestra. *Id.* en las págs. 472-473, n. 4.

Por último, tan recientemente como en *U.P.R. v. Lorenzo Hernández*, 184 D.P.R. 1000 (2012) (resuelto el 27 de marzo de 2012), en el cual nos expresamos por vez primera sobre la Ley de Hostigamiento Sexual en las Instituciones de Enseñanza, Ley Núm. 3 de 4 de enero 1998, 3 L.P.R.A. secs. 149 *et seq.*, reconocimos que el nivel de responsabilidad de una institución de enseñanza por actos de hostigamiento sexual de sus empleados dependería de la relación existente entre el hostigador y la persona hostigada. Sobre esta conclusión, expresamos que: "Estos grados de responsabilidad, así como otros aspectos de la ley, la distinguen de su homóloga federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988, 29

L.P.R.A. sec. 155b". *Lorenzo Hernández*, 184 D.P.R. en la pág. 1017, n. 14.

## III

Aclarado el nivel de responsabilidad de un patrono por los actos de hostigamiento sexual en el empleo cometidos por sus supervisores, procedemos a evaluar los hechos particulares de este caso para dilucidar si las acciones del señor Rivera constituyeron hostigamiento sexual en el empleo en su modalidad de ambiente hostil.

De las más de cincuenta (50) determinaciones de hechos realizadas por el Tribunal de Primera Instancia, cuyos hechos fundamentales se detallan en la Parte I de esta opinión y **a las cuales se allanaron todas las partes** al acudir mediante apelación al Tribunal de Apelaciones, se desprende inexorablemente que las acciones del subgerente Rivera crearon un ambiente laboral intimidante, hostil u ofensivo para la señora Haydeé Ortiz González, en violación al artículo 3(c) de la Ley 17. 29 L.P.R.A. sec. 155b. El Tribunal de Primera Instancia concluyó que "quedó claramente establecido que Rivera entabló un patrón no consentido de denigrantes comentarios e intentos de roces corporales entre ambos, que ocasionaron que la demandante fuese humillada como mujer al ser limitada en los ojos de Rivera a un mero objeto sexual para su disfrute". *Ortiz González v. Burger King*, ADP2011-0180 (612), en la pág. 24. Coincidimos enteramente con el foro primario y no encontramos justificación alguna que amerite alterar la apreciación de

la prueba vertida en corte, ni las conclusiones de derecho que realizara el tribunal.

Los acercamientos sexuales no deseados hacia una persona no deben ser tolerados en ningún ámbito de nuestra vida social, especialmente en la esfera laboral donde la interacción constante entre individuos es necesaria para cumplir cabalmente con un fin colectivo determinado. Para la inmensa mayoría de nuestros conciudadanos, el lugar de empleo representa el espacio físico al cual acudir por necesidad para proveer el sostén de sus hogares. Por tal razón, la protección contra cualquier ataque a la honra y a la dignidad de los individuos debe salvaguardarse particularmente en este espacio.

En el entorno laboral, el acoso sexual desvaloriza el trabajo femenino y, al mismo tiempo, su vivencia provoca, en quien lo sufre, un sentimiento de poco valor. De esta forma, se sostiene que "la circularidad de la experiencia es una marca propia de toda forma de discriminación". María del Carmen Díaz Descalzo, El acoso sexual en el trabajo, en *Mujer y Trabajo* 180 (2003). Es por ello que cuando los acercamientos provienen de un superior o de una persona de mayor jerarquía institucional, la persona hostigada es sometida a una encrucijada inadmisible: o tolera los actos reprochables en su contra y así no ve afectado su sostén o los delata y se arriesga a que se afecten adversamente sus condiciones de empleo. Con esto en mente, las juezas y los jueces debemos cerciorarnos de que las circunstancias en que se realice el trabajo en una empresa, grande o pequeña, no

mengüen la dignidad humana ni la intimidad del trabajador, ni que se discrimine por razón de sexo, todos valores recogidos en nuestra legislación laboral, pero más importante aún, principios de dimensión constitucional y de derechos humanos. Sólo así contribuiremos a erradicar esta repudiable conducta.

Por todo lo anterior, reinstauraríamos en su totalidad la sentencia dictada por el Tribunal de Primera Instancia, la cual condenó a todos los demandados a satisfacer solidariamente a la señora Ortiz González las siguientes partidas: $10,000 por daños y perjuicios y angustias mentales por los actos de hostigamiento sexual cometidos por el subgerente Rivera en violación al artículo 3 de la Ley 17; $1,000 por los daños y perjuicios ocasionados por la supervisora Vázquez al permitir un ambiente de humillación posterior al momento en que la demandante delató el patrón de hostigamiento sexual del señor Rivera, al amparo del artículo 1803 del Código Civil; costas; y $2,750 por concepto de honorarios de abogado. Además, tal y como hiciera correctamente el Tribunal de Apelaciones, duplicaríamos la cuantía de $10,000 otorgada a la demandante por los actos de hostigamiento sexual a los que estuvo sujeta, en cumplimento de la orden establecida en el artículo 11 de la Ley 17, 29 L.P.R.A. sec. 155j.

## IV

Finalmente, considero necesario e imprescindible replicar a algunas de las aseveraciones de la otra opinión de conformidad que acompaña esta ponencia. En ésta se nos

invita a adoptar la normativa federal discutida en esta opinión.

No podemos acoger dicha invitación pues tal proceder excede las facultades que nos han sido delegadas por el Pueblo de Puerto Rico mediante nuestra Constitución. Lo propuesto no es realmente interpretar flexiblemente un estatuto ambiguo, sino sustituir la intención legislativa inequívoca del artículo 5 por la del juzgador. En ausencia de defecto constitucional, no podemos sustituir el criterio del legislador porque éste nos parezca injusto o porque consideremos que lo legislado es malo o que hay mejores maneras de legislar. Ello, más que nada, sería legislar desde el estrado.

Luego de discutir la jurisprudencia puertorriqueña y federal sobre hostigamiento sexual, la otra opinión de conformidad asevera la siguiente:

> De lo antes expuesto, podemos concluir que previo a determinar si el patrono responde por los actos de hostigamiento sexual en el trabajo, es imprescindible atender cuál era la relación laboral existente entre la víctima y el alegado hostigador. Ello así, pues la propia legislación distingue entre los actos de hostigamiento cometidos por el patrono, sus supervisores o agentes y aquellos realizados por los empleados. **Sin embargo, como explicaremos más adelante, somos del criterio que la responsabilidad patronal no debe ser impuesta de manera automática en todos los casos de hostigamiento sexual cometidos por sus supervisores o agentes, y de que debemos adoptar la doctrina federal vigente sobre la procedencia de una defensa afirmativa en los casos de hostigamiento sexual por ambiente hostil.**

Op. Conformidad, pág. __.

Como primer fundamento para su posición, se alega que hemos ignorado el historial legislativo. Primero lo evidente, si una ley es clara, no hay porque auscultar la intención legislativa más allá de su texto. Ahora bien, aun si tuviésemos que considerar el historial legislativo, debemos puntualizar que la "interpretación" esbozada sobre éste es selectiva pues se ampara, exclusivamente, en el Informe Conjunto presentado ante la Cámara de Representantes, en el cual se expresa que la norma debe adoptarse con el mismo alcance otorgado por la Corte Suprema federal en el caso *Meritor Savings*.

Como ya discutimos, en *Meritor Savings* se interpreta la protección contra el hostigamiento sexual **bajo la Ley Federal de Derechos Civiles, cuya redacción es distinta a la Ley 17**, y el Tribunal Supremo optó por distanciarse de las guías de la E.E.O.C; es decir, la Corte Suprema nunca dijo que la responsabilidad patronal por actos de supervisores establecida en dichas guías fuera otra cosa que responsabilidad propiamente vicaria. De hecho, **dijo expresamente lo opuesto.**

Por otro lado, tiene razón la otra opinión de conformidad al sostener que "cuando un estatuto es copiado o adoptado de otra jurisdicción, se presume que se adopta con la interpretación que se le ha dado en la jurisdicción de donde procede". *Beníquez v. Vargas*, 184 D.P.R. 210 (2012). El error estriba en **que la ley que interpretó el Supremo federal en *Meritor Savings* no fue la ley que "copiamos o adoptamos" en nuestra jurisdicción.**

El máximo foro federal podía diferir de las guías rectoras que esbozara la E.E.O.C. pues su discreción para interpretar independientemente la ley estadounidense no se ve menoscabada de manera alguna por unas normas directivas creadas por una agencia administrativa. Cosa diametralmente opuesta es decir que esas guías, **que sí fueron copiadas de manera idéntica a nuestra jurisdicción mediante la Ley 17,** dicen algo contrario a lo que disponen expresamente. **Ante la claridad del lenguaje utilizado, la conclusión contraria resulta francamente inverosímil.**

El Tribunal de Apelaciones y la otra opinión de conformidad omiten por completo mencionar el resto del historial legislativo de nuestro estatuto, el cual contraviene inexpugnablemente su dictamen final. Tal proceder se revela poco juicioso. **La Exposición de Motivos de la Ley 17 dispone expresamente que "[e]n Puerto Rico también, en casos de discrimen en el empleo por razón de ideas políticas, raza o color, edad, origen nacional y origen o condición social, la legislación existente establece la responsabilidad *absoluta* del patrono cuando el discrimen proviene de sus supervisores agentes o representantes. . . . El grado de responsabilidad patronal por el hostigamiento sexual en su centro de empleo se determinará por la relación de la persona que hostiga con el patrono".** Exposición de Motivos, Ley Núm. 17 de 22 de abril de 1988. En la propia Cámara de Representantes, el entonces Secretario de Justicia, Lcdo. Héctor Rivera Cruz, aclaró el origen de la redacción seleccionada (las guías de

la E.E.O.C.) y la favoreció precisamente como un **mecanismo para rechazar la interpretación realizada por la Corte Suprema en *Meritor Savings*,** la cual había sido objeto de fuertes críticas. **El Secretario también compareció ante el Senado de Puerto Rico y expresó indubitadamente el mismo parecer.**

El historial **completo** de esta medida muestra, incluso, una carta oficial del Secretario dirigida al entonces Gobernador, Hon. Rafael Hernández Colón, en la que dispuso que **el Departamento de Justicia rechazaba que se eliminara o alterara la redacción del artículo 5,** *según propuesto por algunas per*sonas, **pues dicho artículo tenía el propósito de aclarar la incertidumbre creada a raíz de *Meritor Savings.*** A igual conclusión llegó la Hon. Velda González de Modestti, Presidenta de la Comisión Especial de Asuntos de la Mujer del Senado, quien plasmó en su informe que la mejor manera de asegurar el compromiso por parte del patrono era adoptando la norma de responsabilidad "absoluta". Como si fuera poco, el foro apelativo intermedio y la opinión de conformidad del Juez Asociado señor Rivera García tampoco consideran el extenso debate legislativo que se suscitó sobre el tema en la Cámara de Representantes antes de la aprobación final de la medida. De él se desprende que la responsabilidad "absoluta" del patrono fue discutida a cabalidad, a tal punto que ocasionó que algunos legisladores, específicamente el Representante Luciano Hernández, se abstuvieran de emitir un voto favorable a la adopción de la medida, a pesar de apoyar el

resto, precisamente porque se incluyó este estándar de responsabilidad patronal.

Reafirmamos nuestro aval a la norma de hermenéutica reiterada arduamente por este Tribunal que dispone que cuando la ley es clara y no es ambigua, no hay necesidad de mirar más allá de su letra en búsqueda de la intención legislativa. Debemos descubrir y darle efecto a la intención expresada mediante la letra de la ley. Asimismo, aun si concluyéramos que la Ley 17 es ambigua en su lenguaje y nos viéramos obligados a evaluar el historial legislativo para adjudicar la controversia ante nos, un **análisis completo** de dicho historial tampoco nos permitiría avalar el camino trazado por la otra opinión de conformidad. Distinto a lo que se sugiere en esa opinión, los debates plasmados en ese historial no recogen meramente unas diferencias de criterio que nos den margen amplio para escoger la postura que más nos satisfaga individualmente. Por el contrario, muestran que ambas propuestas (responsabilidad propiamente vicaria de las guías de la E.E.O.C. y la interpretación de *Meritor Savings*) fueron discutidas seriamente por nuestra Asamblea Legislativa, y que una de ellas prevaleció. Por tanto, nuestro deber es acatar y hacer cumplir la verdadera intención legislativa.

La opinión de conformidad también señala lo siguiente:

> Luego de examinar el texto de la Ley 17 reconocemos que, ciertamente, el Art. 5 consigna que el patrono será responsable por los actos de hostigamiento sexual cometidos por sus supervisores o agentes **independientemente** de que haya tenido conocimiento de los mismos. No obstante, este no excluye de manera categórica que

> el patrono tenga defensas afirmativas para enfrentar la responsabilidad que se le quiere imponer.
> Op. Conformidad, pág. __.

Diferimos de este postulado. Claramente reconocemos en nuestra opinión la posibilidad de que el patrono presente las defensas afirmativas que tenga a bien plantear. Por ello hicimos alusión a la jurisdicción californiana y a la posibilidad de aplicar mitigación de daños en algún momento. Pero lo que nos parece incuestionable es que fue el legislador mismo quien se ocupó de impedir expresamente que se cuestionara el nivel de responsabilidad que la ley impone.

La propuesta de esa opinión es la siguiente: aun cuando el legislador ha dispuesto que cada vez que ocurra X (hostigamiento sexual en el empleado por parte de un supervisor), procederá Y (responsabilidad propiamente vicaria del patrono), lo cierto es que esta expresión no es "categórica", por lo tanto al crear una "defensa", cuando ocurra X, no tenemos que ordenar Y. No podemos avalar este razonamiento.

En la otra opinión se plantea que, como estamos dispuestos a reconocer una defensa, entonces es contradictorio que no permitamos la que allí se sugiere. En realidad, no creí que fuera necesario aclarar que ninguna defensa afirmativa posible podría ser ilegal. La imposición de responsabilidad vicaria —distinto a la de responsabilidad absoluta— nunca ha eliminado la posibilidad de que el afectado levante **defensas afirmativas *existentes*,**

**que no contravengan la incuestionable voluntad legislativa plasmada en leyes.** Sería posible presentar como defensa la mitigación de daños porque ello no tiene nada que ver con el nivel de responsabilidad impuesto al patrono por actos de hostigamiento sexual en el empleo realizado por sus agentes o supervisores, sino que sólo alteraría la cuantía que éste finalmente pagaría de manera vicaria. Por tanto, no se contraviene la voluntad legislativa. A fin de cuentas, el error consiste en categorizar la responsabilidad impuesta —vicaria— como una defensa cuando de lo que se trata es del nivel de responsabilidad que el legislador determinó corresponde imponer, sin más.

Lo cierto es que la otra opinión de conformidad trasluce un cierto grado de antipatía con la ley como está escrita. Si bien puede que no consideremos la norma establecida como la más sabia o más justa, no nos corresponde a nosotros corregirla. Esa es una pura función legislativa y no judicial.

Acatar la indudable voluntad del legislador no es sinónimo de que concordamos con su política pública, sino más bien que somos conscientes de cuál es nuestro rol tal cual se estatuyó en la Constitución. En este caso no pasamos juicio sobre las virtudes o deficiencias de la Ley 17, sino sobre su texto- Y es evidente que el propósito del artículo 5 era imponer responsabilidad propiamente vicaria a los patronos por actos de hostigamiento sexual en el empleo llevados a cabo por sus agentes y supervisores.

**V**

Por los fundamentos expuestos anteriormente, revocaría la sentencia emitida por el Tribunal de Apelaciones y modificaría el dictamen del Tribunal de Primera Instancia conforme a los pronunciamientos esbozados en esta opinión.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Haydeé Ortiz González

     Recurrida

     v.

                                  CC-2009-0243

Burger King de Puerto Rico, José     AC-2009-0020
     Rivera, Daisy Vázquez

     Peticionarios

Opinión de Conformidad emitida por el Juez Asociado señor Rivera García a la que se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 27 de junio de de 2013.

Estoy conforme con la sentencia que el Tribunal emite en el día de hoy por la cual se revoca en parte y se modifica el dictamen del foro apelativo intermedio. En esencia, resolvemos que todos los demandados son responsables solidariamente por los actos constitutivos de hostigamiento sexual en el entorno laboral a los que fue sometida la Sra. Haydee Ortiz González.

Ahora bien, diferimos del criterio que postula que la Ley de Hostigamiento Sexual en el Empleo, *infra*, establece una responsabilidad vicaria

de la cual no puede desvincularse el patrono. El análisis expuesto en la Opinión de Conformidad de la distinguida Juez Asociada señora Rodríguez Rodríguez es contrario a la clara intención legislativa del referido estatuto.

Por entender que la responsabilidad aplicable a un patrono por los actos de hostigamiento sexual incurridos por sus supervisores o agentes no debe ser impuesta de manera automática, me veo precisado a emitir estos pronunciamientos. Consecuentemente, en armonía con la política pública de trabajo equitativa y justiciera que la Asamblea Legislativa adoptó en el ambiente laboral, afirmo los criterios que fundamentan mi razonamiento. Adelanto que estamos contestes con la conclusión de que la señora Ortiz González fue víctima de hostigamiento sexual en su lugar de empleo.

En ánimo de no ser repetitivo, adoptamos los antecedentes fácticos reseñados adecuadamente en la Sentencia del Tribunal. En vista de ello, presentamos un marco jurídico y el análisis de su aplicación a la controversia que tenemos ante nuestra consideración. Pasemos a esbozar una síntesis del alcance del dictamen del foro de primera instancia y de la sentencia recurrida.

I

La Sra. Haydeé Ortíz González (señora Ortiz González o demandante) presentó una demanda el 5 de abril contra Caribbean Restaurants LLC, la Sra. Daisy Vázquez y el Sr. José Rivera (codemandado). La demandante alegó que fue víctima de hostigamiento sexual, persecución y represalias. Además, solicitó una indemnización en daños y perjuicios al amparo de la

Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 *et seq.*, conocida como la Ley sobre Hostigamiento Sexual en el Empleo (Ley Núm. 17); la Ley Núm. 69 de 6 de juio de 1985, 29 L.P.R.A. secs 1321 *et seq.*; la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 148 *et seq.*; los artículos 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141-5142; y la Constitución de Puerto Rico.

Luego de aquilatar la prueba presentada en el juicio plenario, el Tribunal de Primera Instancia desestimó las causas de acción bajo la Ley Núm. 80, *supra*, la Ley Núm. 69, *supra* y la Ley Núm. 100, *supra*. En su dictamen coligió que no se evidenció que la demandante sufrió un despido constructivo. Así como tampoco su renuncia se debió al hostigamiento sexual al que la expuso el señor Rivera, ni hubo discrimen por parte de Caribbean Restaurants por razón del sexo de la demandante. No obstante, el foro primario concluyó que el codemandado Rivera incurrió en actos de hostigamiento sexual hacia la señora Ortiz González. Asimismo, determinó que la alta jerarquía de la compañía trató el hostigamiento sexual del señor Rivera hacia la demandante de forma adecuada, ya que tan pronto advino en conocimiento de tal conducta lo documentó, suspendió al agresor y celebró una investigación en tiempo mínimo. En consecuencia, expresó que Caribbean Restaurants actuó afirmativamente como un patrono debe conducirse para prevenir y remediar un caso de hostigamiento sexual. Empero, al interpretar el Art. 5 de la Ley Núm. 17, *supra*, coligió que la compañía debía responder por las actuaciones del codemandado por el mero hecho de ser este un supervisor. Véase Apéndice del recurso, pág. 256. Igualmente, el foro primario concluyó que la demandante también fue humillada

por la falta de supervisión de parte de la gerente Vázquez al no prohibir ni sancionar el ambiente suscitado en el restaurante luego de la renuncia del codemandado.

Por consiguiente, al haberse probado las causas de acción de hostigamiento sexual y de daños y perjuicios por un ambiente inadecuado de trabajo, resolvió que los demandados debían indemnizar solidariamente a la señora Ortiz González. Concretamente, el dictamen del tribunal de instancia condenó a los demandados a satisfacer a la demandante la suma de $10,000 en concepto de daños y perjuicios y angustias mentales causados por los actos de hostigamiento sexual del señor Rivera y $1,000 por daños y perjuicios ocasionados por la señora Vázquez al permitir un ambiente de humillación luego de que la demandante delatara el patrón de hostigamiento sexual del codemandado. Así también, $2,750 por concepto de honorarios de abogado.

El 7 de febrero de 2008, la demandante presentó una moción de determinaciones adicionales de hechos y derecho. Por su parte, el 13 de febrero del mismo año Caribbean Restaurants solicitó reconsideración de la sentencia emitida, pero el foro primario denegó ambas mociones.

No contestes, ambas partes acudieron al Tribunal de Apelaciones. De un lado, la demandante alegó que la indemnización concedida no era proporcional a los daños causados y que la Ley Núm. 17 requería que dicha cuantía fuera duplicada. De otra parte, Caribbean Restaurants, arguyó que no estaba obligado a responder por los actos de sus empleados pues tomó las medidas correctivas necesarias antes y después de los hechos de la controversia. El señor Rivera se opuso al recurso

presentado por la demandante y sostuvo que los elementos de hostigamiento sexual no fueron probados así como tampoco se demostró que la conducta imputada causara cambios en los términos y condiciones del empleo de la demandante.

El 30 de junio de 2008 el foro apelativo intermedio dictó una resolución en la que dispuso que Caribbean Restaurants no respondería por los actos del codemandado. Esto tras concluir que la empresa cumplió con sus responsabilidades legales al promover una política de prevención y corrección de actos de hostigamiento sexual en el empleo. Entendió el tribunal a quo que al determinar si un patrono es responsable por los actos de sus supervisores, es necesario considerar la totalidad de las circunstancias en que ocurrieron los hechos, según lo dispone el Art. 4 de la Ley Núm. 17. Conforme a ello, dispuso que los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores, pues hay que sopesar las circunstancias de cada caso. Por consiguiente, al evaluar la situación de autos determinó que el señor Rivera debía responder por sus actos y no la compañía.

De otra parte, el foro intermedio concluyó que la compañía era responsable por las acciones de la señora Vázquez bajo el Art. 1803 del Código Civil. Asimismo, determinó que la compensación de $10,000 era adecuada y que conforme al Art. 11 de la Ley Núm. 17, procedía su duplicación.

Insatisfecho, el 30 de marzo de 2009 el señor Rivera compareció ante nos mediante una petición de *certiorari* para solicitar la revocación de la sentencia emitida por el foro apelativo. En particular, señaló que el tribunal erró al

determinar que incurrió en actos de hostigamiento sexual en su modalidad de ambiente hostil. Así también, arguyó que dicho foro erró al confirmar los daños adjudicados. Reclamó que, en la alternativa, Caribbean Restaurants respondía solidariamente en virtud de la Ley Núm. 17.

Asimismo, el 24 de marzo de 2009 la señora Ortiz González acudió ante nosotros mediante un recurso de *certiorari* y reclamó que las sumas otorgadas no correspondían a una valoración objetiva de los perjuicios sufridos. Sostuvo además, que el tribunal apelativo incidió al revocar la imposición de responsabilidad solidaria de Caribbean Restaurants al dejar sin efecto la fijación de honorarios de abogado a esa compañía.

Subsiguientemente, el 18 de septiembre de 2009 denegamos el recurso presentado por el señor Rivera, pero en reconsideración lo expedimos el 30 de octubre de ese año. Por su parte, el recurso de la demandante se expidió el 8 de octubre de 2009. En consecuencia, el 18 de agosto de 2010 ordenamos la consolidación de ambas peticiones. Así pues, con el beneficio de la comparecencia de las partes pasamos a exponer el derecho aplicable a la controversia de autos.

II

Mediante la Opinión de Conformidad avalada por otros miembros de esta Curia se interpreta que la responsabilidad del patrono por los actos de hostigamiento sexual cometidos por sus agentes o supervisores es de carácter vicario y debe ser impuesta de manera automática independientemente de cualquier

otro factor.[10] Esto, a pesar de que el patrono haya tomado las medidas preventivas y educativas que dicta la ley y así también,

---

[10] Precisa mencionar los términos de responsabilidad absoluta y responsabilidad vicaria se han intercambiado y confundido.

En nuestra jurisdicción está vigente la teoría jurídica que impone responsabilidad extracontractual absoluta al fabricante por los daños causados por productos defectuosos. Así pues, la responsabilidad absoluta es una doctrina que se refiere a responsabilidad sin culpa y sin negligencia. Es decir, no hay que probar negligencia, solamente que el producto era defectuoso y que dicho defecto fue la causa del daño. Aponte Rivera v. Sears, Roebuck de Puerto Rico, Inc., 144 D.P.R. 830 (1998).

De otra parte, en el Artículo 1802 del Código Civil, 31 L.P.R.A. 5141, se establece que quien "por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Como corolario de lo anterior, el Artículo 1803 del Código Civil, 31 L.P.R.A. sec. 5142, dispone que "la obligación que impone [el Artículo 1802] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder." Íd. "La responsabilidad de que trata esta sección cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño").

De esa manera, la referida disposición establece el principio de responsabilidad vicaria, la cual cesará cuando las personas a quienes se responsabiliza vicariamente demuestren que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. Íd.

En los casos de responsabilidad vicaria patronal bajo el Artículo 1803, el patrono responde por los actos de sus empleados dentro de las funciones y en cumplimiento de las obligaciones regulares de empleo. Los únicos casos en los que un patrono se puede liberar de esta responsabilidad es si el acto del empleado es para beneficio propio y no benefician al patrono. En Hernández Vélez v. Televicentro, 168 D.P.R. 803 (2006), un empleado cometió actos de hostigamiento sexual. Allí expresamos que un patrono no podía responder por los actos de un empleado que no tenían el propósito de servir y proteger los intereses del patrono, ni tampoco de adelantar los objetivos de su empresa.

Precisa mencionar que el término de "responsabilidad vicaria" es ajeno al Derecho civil. En Puerto Rico hemos adoptado esta terminología del Derecho angloamericano "vicarious liability" que, a su vez surge como vertiente del "master and servant rule". Bajo esta norma, el patrono viene obligado a responder por el empleado sin que haya incurrido en negligencia. En el Derecho civil este concepto se trata como "la responsabilidad por el hecho ajeno", basado en una presunción de culpa *in vigilando* o *in eligendo* en que incurren las personas señaladas como responsables. C.J. Irizarry Yunqué, Responsabilidad civil extracontractual: un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico, Colombia, 2009, pág. 363. Este tipo de responsabilidad realmente se impone, no por el acto ajeno, sino por el acto propio de quien, por su negligencia permite que se cause un daño a un tercero. (Citas internas omitidas.) Íd.

haya sido diligente al manejar una queja de esta naturaleza. Diferimos de esta interpretación extremadamente inflexible por entender que es contraria a la intención legislativa, los principios promulgados en la Ley Núm. 17, y la doctrina federal desarrollada a partir de la interpretación de las guías de la E.E.O.C.. Contrario a lo esgrimido en la Opinión de Conformidad, es necesario considerar la doctrina y jurisprudencia federal al evaluar la imposición de responsabilidad patronal en estos casos.

Recordemos, que cuando un estatuto de otra jurisdicción ha servido de modelo en la confección de una ley local, se presume que se adopta con la interpretación que se le ha dado en la jurisdicción de donde procede. Beníquez et al. v. Vargas et al., 184 D.P.R. 210 (2012). En ese aspecto, la Opinión de Conformidad de la colega señala correctamente que el Art. 5 de la Ley Núm. 17, supra, "es una traducción literal del inciso (c) de las guías de la E.E.O.C.". Opinión de Conformidad Juez Asociada señora Rodríguez Rodríguez, pág. 30. Por esa razón, es fundamental examinar cómo los tribunales federales han lidiado con controversias similares. Al hacer ese análisis, tendremos presente que "[c]uando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarrollos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio". Pueblo v. Rivera

---

En relación a la responsabilidad impuesta por la Ley Núm. 17, para propósitos de nuestra discusión, en aquellas instancias en que señalemos que se le impone responsabilidad a un patrono por el hostigamiento sexual cometido por un supervisor, aunque el primero demuestre haber sido diligente a los efectos de prevenir daños, hablaremos de responsabilidad vicaria impuesta de manera automática o estricta.

Cintrón, 185 D.P.R. 484 (2012), citando a Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983). Véase, además, R. E. Bernier y J. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. Rev., San Juan, Publicaciones J.T.S., 1987, pág. 451. Veamos.

**A. Concepción del hostigamiento sexual en el empleo como una modalidad de discrimen por razón de sexo en la esfera federal**

En 1964 el Congreso de los Estados Unidos aprobó la Ley Federal de Derechos Civiles, 42 U.S.C. secs. 2000e-17, con el fin de evitar las prácticas discriminatorias en el empleo. Con esta legislación se prohibió de manera expresa toda conducta tendente a crear diferencias entre distintos grupos, según clasificados en la propia legislación, en el lugar de trabajo. Tras la aprobación de este estatuto, en la sec. 703 del Título VII, quedó vedado el uso de prácticas discriminatorias en el empleo por razón de raza, color, origen nacional, religión y sexo. Íd. Es meritorio apuntar que aunque el lenguaje del estatuto proscribe el discrimen por razón de sexo, este no menciona de manera expresa la conducta de hostigamiento sexual. Sin embargo, en 1972 el Congreso enmendó el Título VII a través de la Ley de Igualdad de Oportunidades en el Empleo, 42 U.S.C.A. secs. 2000e *et seq*., y creó la Comisión de Igualdad de Oportunidades en el Empleo (E.E.O.C. por sus siglas en inglés). Ello a los efectos de que mediante esta entidad se ejecutara y se velara por el cumplimiento de las disposiciones contenidas en ese cuerpo legal y proveer a toda víctima un proceso de trámite de querellas por razón de discrimen en el empleo.

En aras de promover interpretaciones judiciales conformes al espíritu de la citada disposición, la E.E.O.C. emitió en noviembre de 1980 las normas guía intituladas "E.E.O.C. Guidelines on Discrimination Because of Sex". 29 C.F.R. sec. 1604. De esa forma, identificó el hostigamiento sexual como una clase de discrimen por razón de sexo. Íd. Además, estableció que es necesario analizar la totalidad de las circunstancias al momento de determinar si una conducta en particular es hostigamiento sexual. En específico, las guías promulgadas por la agencia federal establecieron que el hostigamiento sexual puede ser de naturaleza *quid pro quo* (avances sexuales no deseados, solicitud de favores sexuales, y situaciones similares, conectados a una ventaja económica o a algún menoscabo laboral si la solicitud es rechazada). Asimismo, se determinó que los avances, las solicitudes de favores y otros tipos de conducta física de índole sexual pueden constituir hostigamiento sexual si esa conducta tiene el propósito o el efecto de irrazonablemente interferir con el desempeño de una persona en el trabajo o de crear un ambiente intimidante, hostil u ofensivo, aunque estén ausentes las condiciones *quid pro quo*. 20 C.F.R. sec. 1604.11(a)(3). Esta última forma de hostigamiento sexual es lo que se conoce como hostigamiento por ambiente hostil.

En ese contexto, las guías prescribían lo siguiente sobre el hostigamiento sexual en el empleo:

> (a) El hostigamiento sobre la base de sexo es una violación a la Sec. 703 del Título VII. Avances sexuales que no son bien recibidos, solicitudes de favores sexuales y cualquier otra conducta física o verbal de naturaleza sexual, constituye hostigamiento sexual cuando (1) el aceptar tal conducta es

explícita o implícitamente un término o condición para el empleo de un individuo, (2) el aceptar o rechazar dicha conducta por parte de un individuo se utiliza como base para tomar decisiones sobre empleo que afectan a tal individuo o (3) dicha conducta tiene el propósito o efecto de interferir irrazonablemente con la realización del trabajo de un individuo o crear un ambiente de trabajo intimidante, hostil u ofensivo.

(b) Al determinar si una alegada conducta constituye hostigamiento sexual, la Comisión considerará el récord completo y la totalidad de las circunstancias, tales como la naturaleza de las proposiciones sexuales y el contexto en que ocurrieron los alegados incidentes. La determinación de la legalidad de una acción particular se hará a base de los hechos y caso por caso.

(c) Al aplicar los principios generales del Título VII, un patrono, agencia de colocaciones, comité de aprendices u organización laboral (en lo sucesivo mencionadas colectivamente como 'patrono') es responsable por sus actos y por aquellos de sus agentes y supervisores con respecto al hostigamiento sexual independientemente de si los actos específicos de los cuales se protesta estuviesen autorizados o hasta prohibidos por el patrono e independientemente de si el patrono conocía o debió conocer de su existencia. La Comisión examinará las circunstancias de la relación laboral específica y de los trabajos realizados por el individuo para determinar si un individuo actúa en capacidad de supervisor o de agente.

(d) Con respecto a la conducta entre colegas, un patrono es responsable por actos de hostigamiento sexual en el centro de trabajo donde el patrono (o sus agentes o supervisores) conoce o debió conocer la conducta, a menos que pueda mostrar que tomó la acción correctiva apropiada inmediatamente.

(e) Un patrono puede también ser responsable de los actos de personas que no son sus empleados, con respecto al hostigamiento sexual de empleados en el centro de trabajo, cuando el patrono (o sus agentes o supervisores) conoce o debió conocer la conducta y no toma la acción correctiva apropiada inmediatamente. Al revisar estos casos, la Comisión considerará la extensión del control del patrono y cualquier otra responsabilidad legal que pudiese tener el patrono

con respecto a la conducta de dichas personas que no son sus empleados.

(f) La prevención es la mejor herramienta para eliminar el hostigamiento sexual. Un patrono debe tomar todos los pasos necesarios para evitar el hostigamiento sexual, tales como trayendo el tema afirmativamente, expresando una fuerte desaprobación, elaborando las sanciones apropiadas, informando a los empleados de su derecho a traer el asunto y cómo traer el asunto de hostigamiento bajo el Título VII y desarrollando métodos para crear conciencia en todas las personas implicadas.

(g) Otras prácticas relacionadas: cuando se conceden oportunidades o beneficios porque un individuo ha aceptado las proposiciones sexuales del patrono o sus solicitudes sexuales, puede que el patrono sea responsable de discrimen ilegal por razón de sexo contra otras personas que están cualificad[a]s pero a quienes se les negó la oportunidad o el beneficio de empleo. (Traducción nuestra.) 29 C.F.R. sec. 1604.11 (1983).

Luego de varios dictámenes emitidos por los tribunales apelativos, el Tribunal Supremo de Estados Unidos ratificó la conclusión de la E.E.O.C. de que la prohibición de discrimen por razón de sexo debe abarcar el hostigamiento sexual como una manifestación de esa conducta. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). Así pues, la Corte Suprema federal intimó de forma explícita y de conformidad a las Guías de la E.E.O.C. que el hostigamiento sexual es un tipo de discrimen sexual. Al así razonar, confirmó la norma de que las disposiciones contenidas en el Título VII reconocen a los empleados el derecho a trabajar en un ambiente libre de discrimen, intimidación, ridiculizaciones e insultos. Meritor Savings Bank, FSB v. Vinson, supra, pág. 65. Asimismo, ese foro concluyó que el concepto de hostigamiento sexual, además del quid pro quo, incluye el hostigamiento por ambiente hostil.

Ahora bien, determinó que para ser accionable judicialmente bajo las provisiones de ese estatuto, la conducta de hostigamiento sexual debe ser lo suficientemente severa o generalizada como para alterar las condiciones de empleo de la víctima y crear un ambiente de trabajo abusivo. Íd. pág. 67, citando a <u>Henson v. Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982). En ese contexto, **la Corte rechazó la regla de responsabilidad automática a los patronos por los actos de sus supervisores o agentes promovida por las Guías de la E.E.O.C.**. Empero, no proveyó una norma para resolver cuándo procedía asignar responsabilidad patronal en estos casos.

Específicamente, los hechos de <u>Meritor Savings Bank, FSB v. Vinson</u>, supra, trataban de una demanda instada por la señora Mechelle Vinson contra su patrono, Meritor Savings Bank (Banco). Vinson alegó que sufrió un hostigamiento sexual constante de parte de Sidney Taylor, vicepresidente del Banco y su supervisor.[11] Tras once días de juicio, el tribunal de distrito concluyó que Vinson no fue víctima de hostigamiento sexual, como tampoco de discrimen. También, determinó que el Banco no debía responder por los reclamos de la demandante porque no hubo una notificación previa y porque ningún empleado, incluyendo la demandante, notificó ni instó una queja contra Taylor por hostigamiento sexual. El Tribunal de Circuito de Apelaciones

---

[11] La demandante trabajó en el Banco desde 1974 hasta 1978, fecha en que fue despedida por alegadamente haber abusado de una licencia por enfermedad que le había sido concedida. Esta demandó al Banco y a su supervisor Sidney Taylor porque alegadamente, a insistencias de Taylor, y por temor a perder su trabajo, accedió a tener con él relaciones sexuales. Así pues, en el tiempo que laboró en el Banco tuvo relaciones íntimas con Taylor en unas cuarenta o cincuenta ocasiones. Asimismo, aseveró que el hostigador la seguía al baño de las damas, le coqueteaba frente a otros empleados y que la obligó en varias ocasiones a sostener relaciones involuntariamente. Igualmente, explicó que nunca notificó los hechos antes descritos porque no quería perder su trabajo.

CC-2009-0243 Cons. con AC-2009-0020

revocó y resolvió que el tribunal inferior falló al no considerar si la demandante había hecho un reclamo por hostigamiento sexual basado en su modalidad de ambiente hostil. Además, sostuvo que la notificación al patrono sobre el hostigamiento era irrelevante para los propósitos de asignar responsabilidad. Ello, por entender que los patronos son responsables de manera estricta por ese tipo de hostigamiento.

Finalmente, el Tribunal Supremo de Estados Unidos rechazó las determinaciones de responsabilidad formuladas por ambos tribunales. Al así proceder, la Corte Suprema coligió que al definir que el término "patrono" incluye "agente" en el Título VII, el Congreso quiso establecer ciertos límites sobre los actos de empleados por los cuales los patronos deben responder. Meritor Savings Bank, FSB v. Vinson, págs. 62, 72. Sin entrar a establecer una regla definitiva, el Tribunal razonó que aunque los principios de agencia del derecho común no son transferibles con todas sus particularidades al Título VII, estos deben servir de guía a los tribunales al momento de evaluar los reclamos de responsabilidad patronal por hostigamiento sexual de los supervisores. [12] En vista de ello, el Más Alto Foro federal

---

[12] Para ese entonces estaba vigente el Restatement (Second) of Agency § 219 que establecía que:

> (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
>
> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> (a) the master intended the conduct or the consequences, or
>
> (b) the master was negligent or reckless, or

sostuvo que el tribunal apelativo erró al establecer una regla de responsabilidad vicaria automática en dichos casos. **No obstante, aclaró que la ausencia de notificación o conocimiento de los hechos no libera automáticamente de responsabilidad al patrono.** Además, puntualizó que tampoco lo libera de responsabilidad el hecho aislado de que tenga una política antidiscriminatoria y un procedimiento de querellas. [13] Concretamente la Corte Suprema pautó que:

> We therefore decline the parties' invitation to issue a definitive rule on employer liability, but we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency 219-237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. Ibid. <u>Meritor Savings Bank v. Vinson</u>, supra, pág. 72.

---

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

---

[13] Esto es contrario a lo que arguye la otra Opinión de Conformidad sobre que "[c]on este proceder, la Corte Suprema optó por distanciarse de las guías establecidas por la E.E.O.C. en cuanto a la responsabilidad patronal …". Opinión de Conformidad, Juez Asociada señora Rodríguez Rodríguez, pág. 24. Más bien, el Tribunal Supremo de Estados Unidos avaló las guías de la E.E.O.C. y opinó que estas debían ser interpretadas a la luz de los principios de agencia. Esta norma jurisprudencial fue conforme a la intención de las guías, tanto así que, como mencionaremos más adelante, la E.E.O.C. aclaró dichas normas conforme a lo dispuesto en ese dictamen federal y otros pronunciamientos posteriores que también discutiremos en nuestro escrito.

De otra parte, el Tribunal enfatizó que no todo tipo de conducta o lenguaje es suficiente para constituir hostigamiento sexual mediante la creación de un ambiente hostil. Para que así sea, **el hostigamiento tiene que ser lo suficientemente severo como para alterar las condiciones de empleo y crear un ambiente de trabajo desfavorable para la víctima**. Resolvió además, que a base de las Guías emitidas por la E.E.O.C., el juzgador de hechos deberá examinar la totalidad de las circunstancias que rodean el caso, evaluar la naturaleza de las proposiciones y el contexto en que ocurrieron los incidentes. 29 C.F.R. sec. 1604.11(b) (1983). Al aplicar este enfoque, concluyó que el hecho de que la querellante hubiese actuado voluntariamente al sostener relaciones sexuales con el hostigador no constituía una defensa. Así pues, estableció que lo determinante no es si la participación de la víctima en la relación sexual fue voluntaria, sino que las proposiciones o los avances sexuales no hayan sido bienvenidos. 29 C.F.R. sec. 1604.11(a) (1983); Véase Rodríguez Meléndez v. Supermercados Amigo Inc., 126 D.P.R. 117 (1990). Por ende, lo crucial, según apuntó la Corte, es verificar si las manifestaciones en controversia no fueron bien recibidas, y no si la participación real de la persona alegadamente hostigada en la relación sexual fue voluntaria. Meritor Savings Bank v. Vinson, supra, pág. 68; Rodríguez Meléndez v. Supermercados Amigo, Inc., supra.

A partir de la norma establecida en Meritor, los tribunales reconocieron que un patrono es susceptible de responder vicariamente bajo el Título VII de la Ley Federal de Derechos Civiles, por el hostigamiento sexual en su modalidad de ambiente hostil creado por un superior a un empleado de menor

jerarquía. Sin embargo, en ausencia de una norma específica sobre los límites de la responsabilidad de los patronos, los dictámenes por parte de los tribunales inferiores sobre ese aspecto eran variados.

Posteriormente, en 1998 el Tribunal Supremo federal resolvió cuáles serían los criterios aplicables para resolver el particular de la responsabilidad vicaria patronal. Ello lo hizo a través de dos casos resueltos ese mismo año: Faragher v. City of Boca Raton, 524 U.S. 775 (1998) y Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). Aunque ambos casos presentaban distintos hechos, el Tribunal aplicó un raciocinio unificado en cuanto a la responsabilidad vicaria del patrono por el hostigamiento sexual cometido por sus supervisores o agentes. De esa forma, sostuvo que un patrono **es responsable de manera automática por las acciones de hostigamiento sexual que culminan en una acción laboral tangible contra de la víctima.**

Por otro lado, el Tribunal Supremo federal consideró que constituiría una extralimitación responsabilizar a los patronos en todos los casos en que la acción de hostigamiento del supervisor no culmina en una acción laboral tangible.[14] Por ello, resolvió que cuando el supervisor o agente hostigador no toma acciones laborales tangibles contra la víctima, el patrono puede presentar una defensa afirmativa sostenida en: (1) los esfuerzos que este haya realizado para prevenir y corregir el hostigamiento, y (2) el que la víctima de manera irrazonable haya fallado en aprovechar las oportunidades provistas por el patrono para evitar o mitigar daños. Faragher v. City of Boca

---

[14] Vance v. Ball State Univ. 570 U.S. __ (2013), resuelto el 24 de junio de 2013.

Raton, supra, en pág. 807; Burlington Industries, Inc. v. Ellerth, supra, en pág. 765.

En el caso de Burlington Industries, Inc. v. Ellerth, supra, Kimberly Ellerth, una vendedora de Burlington alegó que Ted Slowik, un gerente que la supervisaba de manera indirecta, le profirió comentarios sexuales no deseados y le indicó que su éxito en la compañía estaba supeditado a que esta se sometiera a sus avances. Aunque Ellerth rechazó las invitaciones de Slowik, este nunca ejecutó sus amenazas y no tomó ningún tipo de acción laboral contra ella. Ante este marco fáctico, la Corte Suprema decidió que esta no era una situación de hostigamiento laboral *quid pro quo*. Conforme a ello, expresó que las simples amenazas de acciones adversas o las promesas de beneficios laborales que no se cumplen, no son suficientes para convertir una reclamación de hostigamiento sexual por ambiente hostil en una de *quid pro quo*. Íd., pág. 754. Así pues, la distinción sustantiva principal entre el hostigamiento sexual que resulta en una acción laboral tangible (*quid pro quo*) y el que no desemboca en ningún tipo de acción laboral (ambiente hostil) es que este último requiere que se pruebe que el hostigamiento fue severo o ya estaba generalizado. Mientras, en el primer supuesto, solamente tiene que probarse que hubo una acción laboral contra la víctima por razón de que esta se negó a aceptar los avances sexuales del supervisor o agente. En esta último supuesto, presentar prueba de que hubo una acción laboral tangible será suficiente para probar el hostigamiento sexual *quid pro quo,* y, en consecuencia, el patrono será automáticamente responsable por los actos del supervisor. No es necesario demostrar que el hostigamiento sexual fue severo o que ya estaba generalizado. **Así pues, la**

**responsabilidad vicaria automática del patrono procede cuando el supervisor que hostiga toma "acciones laborales tangibles" contra su víctima**. Resulta conveniente resaltar que el Tribunal definió el término de "acción laboral tangible" como "un cambio significativo en el estatus de empleo, como emplear, despedir, no ascender, reasignar puestos con responsabilidades significativamente diferentes, o la decisión de causar un cambio significativo en beneficios". Burlington Industries, Inc. v. Ellerth, supra, en pág. 761.

Igualmente, opinó que cuando el hostigamiento sexual no culmina en una acción laboral tangible, existe una causa de acción bajo la teoría de ambiente hostil en el trabajo. Esto así, pues el hostigamiento sexual por ambiente hostil se basa en la noción de que la conducta sexual no deseada ni bienvenida, si es lo suficientemente severa o generalizada, viola el Título VII porque altera los términos y condiciones de empleo por razón de sexo. Burlington Industries, Inc. v. Ellerth, supra, en pág. 754.

De otra parte, en Faragher v. City of Boca Raton, supra, el máximo foro federal evaluó los reclamos de Beth Ann Faragher que indicaban que fue sometida a un ambiente hostil de naturaleza sexual por sus supervisores inmediatos mientras trabajaba como salvavidas para la ciudad de Boca Raton. Allí, el Tribunal destacó que los estándares de hostigamiento deben ser lo suficientemente exigentes como para asegurar que las disposiciones del Título VII no se conviertan en un "código general de civilidad". Íd. pág. 788. En relación a ese extremo, precisó dicho foro que el estándar de que la conducta imputada sea "severa o generalizada", a los efectos de determinar si

existe hostigamiento sexual por ambiente hostil, es de fácil articulación pero difícil de aplicar. Íd. pág. 786; citando a Meritor, supra, en pág. 67. En su análisis, instó a los tribunales a evaluar la totalidad de las circunstancias prestando particular atención a la frecuencia de la conducta discriminatoria; su severidad; si era amenazante de manera física o humillante; o una mera expresión ofensiva; o si interfirió irrazonablemente con el funcionamiento laboral del empleado. Faragher v. City of Boca Raton, supra, en pág. 787. A fin de cuentas, el Tribunal resolvió que un patrono podrá ser sujeto a responsabilidad vicaria por las acciones de un supervisor que victimice a un empleado mediante un ambiente hostil. Esto es, en aquellas instancias en que el supervisor no tome ninguna medida sobre los términos de empleo de la víctima. Sin embargo, bajo ese supuesto, el patrono puede levantar una defensa afirmativa ante el reclamo de responsabilidad y daños, la cual deberá probar mediante preponderancia de prueba. **Esta defensa se compone de dos elementos: (a) que el patrono ejerció un cuidado razonable para prevenir y corregir prontamente cualquier conducta de hostigamiento, y (b) que el empleado demandante irrazonablemente falló en aprovechar las oportunidades de medidas preventivas o correctivas provistas por el patrono para evitar los daños.** Faragher v. City of Boca Raton, supra, pág. 807; Burlington Industries, Inc. v. Ellerth, supra, pág. 765. Es necesario apuntar además, que esta defensa, una vez establecida, no necesariamente libera al patrono de compensar daños en su totalidad. Según la doctrina adoptada tanto en Faragher como en Ellerth, el grado de limitación de responsabilidad patronal estará sujeto a la determinación del

principio de mitigación de daños. Burlington Industries, Inc. v. Ellerth, supra, en págs. 764-765; Faragher v. City of Boca Raton, supra, en págs. 806-807.[15] Es decir, de establecer que si la parte demandante hubiera ejercido un cuidado razonable y, en consecuencia, se habría evitado **todo** el daño sufrido, el patrono evade toda responsabilidad; en cambio, si se demuestra que la víctima, al ejercer el debido cuidado, solamente hubiera evitado una parte del daño, el patrono es responsable, pero no pagará por los daños que pudieron evitarse. Íd.

Precisa mencionar que luego de estos dictámenes, la E.E.O.C. procedió a derogar el inciso "c" de las Guías sobre discrimen por razón de sexo en el empleo. Particularmente, ese inciso era el que establecía responsabilidad al patrono independientemente de si sabía o no de la conducta de hostigamiento sexual desplegada por sus supervisores o agentes. 29 C.F.R. sec. 1604. De esta forma, adoptó las interpretaciones provistas por el foro supremo federal en Ellerth, supra, y Faragher, supra, sobre cuándo procede la responsabilidad patronal automática y cuándo un patrono puede levantar la defensa afirmativa, y así liberarse de responsabilidad frente a los actos de sus supervisores.[16]

Resulta pertinente resaltar que en una decisión reciente del Tribunal Supremo federal tanto el caso de Ellerth como el de Faragher fueron reafirmados en todo su alcance y extensión.[17]

---

[15] Sobre este extremo se enfatiza el deber de mitigar o evitar daños. Burlington Industries, Inc. v. Ellerth, supra, en págs. 758-759.
[16] Véase Enforcement Guidance on Vicarios Employer Liability for Unlawful Harrasment by Supervisors. Disponible en: http://www.eeoc.gov/policy/docs/harassment.html.
[17] Al así proceder, hacienda alusión a los mencionados casos, el Tribunal Supremo federal expresó que:

Asimismo, se discutieron los contornos de la figura del supervisor en aras de aclarar que no toda persona catalogada como tal, necesariamente es un agente de la empresa para esos propósitos. Como bien mencionamos, hay dos escenarios en los cuales un patrono responderá por el hostigamiento del supervisor: 1) cuando existen acciones laborables tangibles sobre la víctima, lo que da paso a la responsabilidad estricta, y 2) cuando no están presentes este tipo de acciones, pero la defensa afirmativa no procede, lo que da paso a la responsabiliad vicaria del patrono. Respecto a esta última situación, en Ellerth, supra, y Faragher, supra, el Tribunal expresó que el patrono es responsable vicariamente cuando un supervisor crea un ambiente hostil al hacer amenazas explícitas de alterar las condiciones y términos de empleo del subordinado víctima, pero no cumple tal amenaza. 524 U.S.,754; Vance v. Ball State University, 570 U.S.__ 2013, resuelto el 24 de junio de 2013. Ahora bien, en Vance v. Ball State University, supra, el Maximo Foro federal expresa que precisamente este razonamiento ata la segunda situación de hostigamiento a la autoridad del supervisor de infligir un daño económico sobre su víctima. [18] En ese proceder, señala que la responsabilidad

_____

> If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correctany harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive orcorrective opportunities that the employer provided. *Id.,* at 807; *Ellerth*, *supra*, at 765. Under this framework, therefore, it matters whether a harasser is a "supervisor"or simply a co-worker. Vance v. Ball State University, supra, pág. 1.

[18] Sobre este asunto, concretamente el Tribunal expresó lo siguiente:

Those decisions contemplate a unitary category of supervisors, *i.e.*, those employees with theauthority to make tangible employment decisions. There is no hint in either decision that the Court had in mind two categories of supervisors: first, those who have such authority and, second, those who, although lacking thispower, nevertheless have the ability to direct a co-worker'slabor to some ill-defined degree. On the contrary, the *Ellerth/Faragher* framework is one under which supervisory status can usually be readily determined, generally by written documentation.

…

As *Ellerth* recognized, however, "most workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the agency relation," and consequently "something more" is required in order to warrant vicarious liability. 524 U. S., at 760. The ability to direct another employee's tasks is simply not sufficient. Employees with such powers are certainly capable of creating intolerable work environments, see *post,* at 9–11 (discussing examples), but so are many other co-workers. Negligence provides the better framework for evaluating an employer's liability when a harassing employee lacks the power to take tangible employment actions.

…

The *Ellerth/Faragher* framework draws a sharp line between co-workers and supervisors.Co-workers, the Court noted, "can inflict psychologi- cal injuries" by creating a hostile work environment, butthey "cannot dock another's pay, nor can one co-worker demote another." *Ellerth*, 524 U. S., at 762. Only a supervisor has the power to cause "direct economic harm" by taking a tangible employment action. *Ibid*. "Tangibleemployment actions fall within the special province of the supervisor. The supervisor has been empowered by the company *as a distinct class* of agent to make economicdecisions affecting other employees under his or her control. . . . Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Ibid*. (emphasis added).The strong implication of this passage is that the authority to take tangible employment actions is the definingcharacteristic of a supervisor, not simply a characteristicof a subset of an ill-defined class of employees who qualify as supervisors.

… As noted, the *Ellerth/Faragher* framework sets out two circumstances in which an employer may be vicariously liable for a supervisor's harassment. The first situation (which resultsin strict liability) exists when a supervisor actually takes a tangible employment action based on, for example, a subordinate's refusal to accede to sexual demands. The second situation (which results in vicarious liability if theemployer cannot make out the requisite affirmative defense) is present when no such tangible action is taken.Both *Ellerth* and *Faragher* fell into the second category, and in *Ellerth*, the Court couched the question at issue inthe following terms: "whether an employer has vicariousliability when a supervisor creates a hostile work en- vironment by making explicit threats to alter a subordinate's terms or conditions of employment, based on sex, but does not fulfill the threat." 524 U. S., at 754. This statement

vicaria se justifica debido a que el supervisor tiene esa autoridad laboral y el hecho de que en virtud de la misma puede cumplir sus amenazas contra la víctima.  Íd. pág. 19.[19]

## B.  La Ley sobre el Hostigamiento Sexual en el Empleo en Puerto Rico

La inviolabilidad de la dignidad del ser humano es el principio primordial sobre el cual se cimentan los derechos fundamentales de toda persona. Art. II sec. 1, Const. P.R. 1 L.P.R.A., Tomo 1, ed. 2008; U.P.R. Aguadilla v. Lorenzo Hernández, 184 D.P.R. 1001 (2012). Así pues, en nuestra Constitución se establece como derecho fundamental la protección de toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II Sec. 8, Const. P.R., *supra*. Igualmente, se prohíbe el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Art. II sec. 1, Const. P.R., *supra*.

Con el fin de promover el valor y la eficacia del mandato constitucional sobre el respeto a la dignidad del ser humano en el ámbito laboral, nuestra Asamblea Legislativa declaró hace más de dos décadas como política pública que el hostigamiento sexual es una forma de discrimen por razón de sexo que menoscaba el principio de la inviolabilidad de la dignidad del ser humano. Véase Universidad de Puerto Rico v. Lorenzo Hernández, supra.

---

plainly ties the second situation to a supervisor's authority to inflict direct economic injury. It is because a supervisor has that authority—and its potential use hangs as a threat over the victim—that vicarious liability (subject to the affirmative defense) is justified.

[19] En el caso de autos , ausente en el expediente cualquier documento que acredite las responsbilidades y facultades del puesto de sub-gerente de la empresa y ante las determinaciones del Tribunal de Primera Instancia de que el Sr. Rivera ocupaba el puesto de gerente cuando la Sra. Vázquez se ausentaba, consideramos entonces que para los efectos el Sr. Rivera era un supervisor dentro de los estándares legales de la jurisprudencia actual y la Ley Núm. 17.

Mediante la aprobación en 1988 de la Ley sobre Hostigamiento Sexual en el Empleo, Ley Núm. 17, se elevó la conducta contenida en su título, al mismo plano de otras modalidades de discrimen existentes tanto a nivel local como federal. Con el referido estatuto, el legislador prohibió el hostigamiento sexual en el empleo, impuso responsabilidades y fijó penalidades por ocurrencia.[20] A esos efectos, la Exposición de Motivos de esta normativa se señala que:

> La práctica del hostigamiento sexual en el empleo, en cualquiera de sus formas, infringe la inviolabilidad [de la dignidad del] ser humano y constituye un claro discrimen contra el hombre o mujer en el campo del trabajo. Obstaculiza la labor de la persona, privándola del goce y disfrute de una vida plena a la cual tiene derecho todo ser humano en igualdad de condiciones ante la ley, según lo expresa el mandato constitucional y es una de las formas en que se manifiesta el discrimen por razón de sexo.
>
> …….
>
> La magnitud de este problema es algo que nos debe interesar y preocupar a todos, ya que el hostigamiento sexual en el empleo constituye una ofensa repudiable contra la dignidad de todo ser humano.[21]

Por su parte, el Art. 3 prescribe que el hostigamiento sexual en el empleo es

> cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:

---

[20] 29 L.P.R.A. sec. 155 *et seq*.
[21] Exposición de Motivos de la Ley Núm. 17 de 22 de abril de 1988.

**(a)** Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
**(b)** Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
**(c)** Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 L.P.R.A. sec. 155 b.

Al interpretar el citado precepto, hemos expresado que los incisos (a) y (b) se refieren al hostigamiento equivalente *quid pro quo*, el cual "se produce cuando el sometimiento o el rechazo de los avances o requerimientos sexuales se toman como base para afectar beneficios tangibles en el empleo". Rodríguez Meléndez v. Supermercado Amigo, Inc., 126 D.P.R. 117, 131 (1990). Mientras, el inciso (c) del Art. 3 trata sobre el hostigamiento sexual que se perpetra al crear un ambiente hostil e intimidante para la víctima. Esta vertiente de hostigamiento hostil "se produce cuando la conducta sexual para con un individuo tiene el efecto de intervenir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo." Íd.; Albino v. Ángel Martínez, Inc., 171 D.P.R. 457 (2007). Así pues, al adoptar el criterio expuesto por el Tribunal Supremo federal en Meritor Savings Bank v. Vinson, supra, y en Rodríguez Meléndez v. Supermercado Amigo, Inc., supra, opinamos que el hostigamiento debe ser lo suficientemente severo como para trastornar las condiciones de empleo y crear un ambiente de trabajo pernicioso para la víctima.

La Ley Núm. 17 dispone además, que para hacer una determinación de hostigamiento sexual en el empleo es

necesario considerar la totalidad de las circunstancias en que ocurrieron los hechos. Art. 4, 29 L.P.R.A. Sec. 155c Por ello, "si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular." Íd. Así pues, al evaluar la existencia de hostigamiento sexual en su modalidad de ambiente hostil es imperativo que el juzgador de los hechos considere el efecto que dicho entorno ha tenido sobre el reclamante. En vista de ello, hemos reconocido que en ese tipo de entorno hostil e intimidante "aunque no afecte seriamente el bienestar sicológico de la víctima, puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado a permanecer en el empleo y disfrutar el progreso de su carrera". Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 654 (1994).

Cónsono con lo enunciado, hemos resuelto que siguiendo el estándar de la totalidad de las circunstancias es imperativo examinar la naturaleza de la conducta imputada, su frecuencia e intensidad, el contexto en el que ocurre, su duración y la conducta y circunstancias personales de la alegada víctima. Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, citando a Harris v. Forklift Systems Inc, 510 U.S. 17 (1993). No es indispensable que dicha conducta sea de naturaleza explícitamente sexual y tampoco se requiere que

se produzca como consecuencia un daño económico. Íd. Según indicamos en Rodríguez Meléndez v. Sup. Amigo, 126 D.P.R. 117 (1990), a la luz de lo resuelto en Meritor Savings Bank v. Vinson, supra, "[a] fin de cuentas, la pregunta de umbral en toda reclamación de acuerdo con esta modalidad es si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo". Rodríguez Meléndez v. Sup. Amigo, Inc, supra, pág. 132.

Siguiendo las pautas establecidas en las Guías de la E.E.O.C., según vigentes en ese momento, en los casos en que se compruebe que una persona ha sido víctima de hostigamiento sexual en el empleo, la Ley Núm. 17 distingue dos tipos de responsabilidad patronal, a saber: cuando los actos de hostigamiento son cometidos por el patrono, sus agentes o supervisores, y cuando estos ocurren entre empleados. Respecto al primer supuesto, el Art. 5 dispone que:

> Un patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores, independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta.
>
> Se examinará la relación de empleo en particular a los fines de determinar si la persona que cometió el hostigamiento sexual actuó en su capacidad de agente o supervisor del patrono.
>
> No será necesario establecer que el agente o supervisor que cometió el hostigamiento sexual supervisaba directamente al reclamante. 29 L.P.R.A. sec. 155d.

Asimismo, el patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si este, sus agentes o sus supervisores "sabían o debían estar enterados de dicha conducta, a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación." 29 L.P.R.A. sec. 155e.

También se establece que "[c]uando el patrono conceda oportunidades o beneficios de empleo como resultado de la sumisión de una persona a los acercamientos o requerimientos sexuales del patrono o de sus agentes o sus supervisores, el primero será responsable de hostigamiento sexual en el empleo ante las personas a quienes les negó tal oportunidad o beneficio." 29 L.P.R.A. sec. 155g.

De lo expuesto, podemos concluir que previo a determinar si el patrono responde por los actos de hostigamiento sexual en el trabajo, es imprescindible atender cuál era la relación laboral existente entre la víctima y el alegado hostigador. Ello así, pues la propia legislación distingue entre los actos de hostigamientos cometidos por el patrono, sus supervisores o agentes y aquellos realizados por los empleados. Sin embargo, como explicaremos más adelante, somos del criterio que la responsabilidad patronal no debe ser impuesta de manera automática en todos los casos de hostigamiento sexual cometidos por supervisores o agentes, y de que debemos adoptar la doctrina federal vigente sobre la procedencia de una defensa afirmativa en los casos de hostigamiento sexual

por ambiente hostil.[22]

Cabe resaltar que, en relación al estándar de responsabilidad patronal por los actos de hostigamiento sexual cometidos por sus agentes o supervisores este Tribunal no se ha expresado de manera categórica o concluyente. Como bien reconoce la otra Opinión de Conformidad, en Rodríguez Meléndez v. Supermercados Amigo Inc., supra, el Tribunal entendió que en ese momento no era necesario incorporar la doctrina federal sobre el estándar de responsabilidad patronal en casos de hostigamiento sexual. Para ese entonces, el ahora Juez Presidente señor Hernández Dentón emitió una opinión concurrente y expresó la necesidad de que el Tribunal definiera expresamente el ámbito de la responsabilidad patronal. En esta ocasión había la oportunidad para así hacerlo, sin embargo al Tribunal estar dividido no fue posible pautar la norma.

De otro lado, no podemos avalar la conclusión que se expone la otra Opinión de Conformidad, pág. 37, de que en Rosario Toledo v. Distribuidora Kikuet, Inc. 151 D.P.R. 634 (2000), dimos por sentado la responsabilidad patronal sin que procedieran defensas afirmativas, en casos de

---

[22] Es prudente señalar que en Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986) según el propio Tribunal aclaró posteriormente en Ellerth v. Burlington Industries Inc., 524 U.S. 742 (1998) no se utilizaron los términos quid pro quo y ambiente hostil para definir un estándar de responsabilidad patronal. Más bien, el Tribunal Supremo federal utilizó estos términos para distinguir las situaciones en las que las amenazas sobre acciones laborales tangibles son ejecutadas y aquellas instancias en que no. En vista de que estos términos no aparecen en el Título VII, no deberían formar parte de un estándar para adjudicar responsabilidad. Ellerth v. Burlington Industries, Inc., supra, pág. 752. Véase también, Nancy Mansfield and Joan Gabel, Analysis of the Burlington and Faragher Affirmative Defense, 19 The Labor Lawyer 107 (2003).

hostigamiento sexual por ambiente hostil cometido por supervisores o agentes. En los hechos de ese caso, una empleada alegó que el presidente y accionista mayoritario de Kikuet la hostigó sexualmente, la despidió de manera injustificada y discriminó contra ella por razón de su embarazo. Distinguimos allí, que la controversia a resolver no era la de si el término "patrono" incluye a sus agentes, oficiales, administradores y supervisores. Más bien, debíamos dirimir si el patrono respondía de manera exclusiva por los actos de hostigamiento cometido por estos y, en consecuencia, los agentes y supervisores quedaban liberados de responder civilmente. Resolvimos pues, que las leyes laborales aplicables a la controversia asignaban responsabilidad patronal, pero no eximían a los agentes o supervisores de responder en su carácter personal por sus actos. Íd. pág. 644. Expresamos además que, "[a]l responsabilizar el legislador al dueño de la empresa por la conducta de hostigamiento sexual de [los] supervisores, oficiales, administradores y agentes lo hizo con el propósito de fomentar la participación activa y concreta de éste, a los fines de asegurar un ambiente de respeto y dignidad hacia el trabajador". Íd. pág. 645. En consecuencia, concluimos que el "legislador no pudo tener la intención de fomentar la conducta proscrita por el estatuto dándole inmunidad a los supervisores, oficiales, administradores y agentes de la empresa para que puedan incurrir en tal conducta impunemente". Íd. Concebimos que

estas expresiones no adelantan y tampoco sostienen la teoría de responsabilidad patronal automática en todos los casos de hostigamiento sexual por ambiente hostil cometidos por los supervisores y agentes. Más bien, estos pronunciamientos aclaran que, en caso de asignarse la responsabilidad, los supervisores también tendrán que responder por sus acciónes. Véase, Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez, pág. 37.

Asimismo, son erradas las expresiones en la Opinión de Conformidad de la compañera sobre el caso de U.P.R. Aguadilla v. Lorenzo Hernández, supra, que inducen a concluir que la responsabilidad patronal según descrita en la Ley Núm. 17, supra, no debe imponerse considerando la jurisprudencia federal aplicable. En la nota al calce. núm. 14 del referido caso se aclara que el nivel de responsabilidad de las instituciones de enseñanza al amparo de la Ley Núm. 3 de 4 de enero de 1988, 3 L.P.R.A. secs. 149 *et seq.* se distingue de la normativa federal estatuida en el Título IX de la Ley Federal de Educación, 20 U.S.C. 1681 *et seq.* La citada nota lee como sigue: "Estos grados de responsabilidad, así como otros aspectos de la ley, la distinguen de su homóloga federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155b...". U.P.R. Aguadilla v. Lorenzo Hernández, supra, esc. 14, pág. 1001. Estas expresiones se refieren exclusivamente al alcance de la Ley Núm. 3, *supra*. La alusión a la Ley Núm. 17, *supra*, es precisamente para

establecer las diferencias de legislación local en materia de hostigamiento sexual en las instituciones de enseñanza *vis a vis* el hostigamiento en el entorno obrero patronal. Empero, la Opinión de Conformidad intenta deslucir ese razonamiento y saca de contexto las expresiones del Tribunal en la referida opinión. Para ser más claros, citamos *ad verbatim* parte de la discusión sobre la diferenciación que allí hicimos para que la Ley Núm. 17 no se extrapolara automáticamente a los casos de hostigamiento sexual en las instituciones de enseñanza:

> Todas las diferencias señaladas justifican el que la interpretación de la Ley Núm. 17, *supra*, y su jurisprudencia, no puedan ser aplicadas de forma automática e irreflexiva en casos de hostigamiento sexual en el contexto de instituciones de enseñanza sin considerar las diferencias entre el contexto de aplicación de cada ley y las personas involucradas. En consecuencia, resolvemos que la normativa aplicable al contexto obrero-patronal es meramente persuasiva y no determinante para la interpretación de la Ley Núm. 3, *supra*. Por estas mismas razones, nuestras conclusiones en el presente caso se limitan al contexto académico. U.P.R. Aguadilla v. Lorenzo Hernández, *supra*, pág. 24.

Por otra parte, en el Art. 10 de la Ley Núm. 17 se exige que el patrono exponga y comunique de manera clara su política contra el hostigamiento sexual entre sus supervisores y empleados para propiciar un ambiente laboral sano y seguro, y proteger la dignidad de sus empleados. 29 L.P.R.A. sec. 155i. Así, se requiere que el patrono tome acciones proactivas para mantener el área de trabajo con un ambiente libre de intimidaciones y hostigamiento. A esos efectos, el referido

artículo menciona las medidas que debe tomar el patrono incluyendo, pero sin limitarse, las siguientes:

> **(a)** Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
> **(b)** Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
> **(c)** Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las secs. 155 a 155m de este título, al amparo de las secs. 1321 a 1341 de este título, las secs. 146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.
> **(d)** Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 L.P.R.A. sec. 155i.

En Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643 (1994) al analizar los méritos de una causa de acción por despido injustificado incoada por un empleado que fue despedido por hostigar a su supervisora, nuestro Tribunal por voz del hoy Juez Presidente señor Hernández Dentón, se expresó sobre las responsabilidades del patrono en casos de hostigamiento sexual. En particular, la conducta del alegado hostigamiento consistió en unas invitaciones a salir por parte del empleado a la supervisora; y luego, en otro incidente, este le bloqueó a la dama la salida del baño. Al concluir que estos hechos constituyeron hostigamiento sexual por crear un ambiente hostil a la supervisora, la administración del hospital despidió al empleado. Señalamos pues, que la Ley Núm. 17, responsabiliza en distintas instancias al patrono por los actos de hostigamiento cometidos por sus supervisores y empleados. De esta forma,

reconocimos que un elemento fundamental de la referida ley es "que le impone al patrono la responsabilidad afirmativa en la prevención, prohibición y erradicación del hostigamiento sexual en el empleo." Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, en pág. 652. Asimismo, expresamos que en estos casos un patrono no puede esperar a que se repita la conducta de hostigamiento para tomar una acción contra el hostigador, pues esa conducta es lesiva a la paz y al funcionamiento del área de trabajo. Íd., pág. 657.

Reseñada la norma jurídica federal y estatal vigente en relación al hostigamiento sexual en el empleo y a la responsabilidad patronal, pasemos a discutir las razones que nos mueven a opinar que la responsabilidad patronal no debe ser impuesta de manera automática en casos de esta naturaleza. Ello implica que se deberá evaluar caso a caso la totalidad de las circunstancias al momento de aquilatar si procede la imposición de responsabilidad.

**C. La Ley Núm. 17 y su relación con la normativa federal**

Como mencionáramos, la Ley Núm. 17 se aprobó con el propósito de elevar el hostigamiento sexual al mismo nivel que otros tipos de discrimen. Específicamente, el Informe de la Cámara de Representantes sobre el Proyecto del Senado 1437 que culminó en la aprobación de la referida ley, demuestra la preocupación de la Asamblea Legislativa por evitar este comportamiento tan nocivo en el entorno laboral. Durante el estudio de la medida, luego de hacer un recuento sobre la normativa federal, incluyendo la interpretación de las Guías de la E.E.O.C. -en las cuales se basó el Proyecto del Senado 1437- el legislador reconoció que Meritor Savings Bank v. Vinson,

supra, es un caso que estableció determinaciones valiosas para el análisis de las referidas Guías. Véase, Informe de la Cámara de Representantes sobre el Proyecto del Senado 1437, pág. 9. Específicamente, en relación a ese asunto el legislador expresó que:

> La jurisprudencia establecida [en el] caso [de Meritor Savings Bank v. Vinson, supra] ha aportado una nueva visión en la interpretación de las guías y la jurisprudencia en él establecida se ha incorporado a esta medida para que al mismo tiempo de ser efectiva se logre un justo balance de todos los intereses y los derechos de las personas concernidas. El resultado final es una legislación de la cual nos sentimos legítimamente orgullosos ya que recoge nuestras preocupaciones y se llega a un resultado justo, equitativo y ponderado como se merece nuestro pueblo. Íd.

Más adelante en el Informe, al comentar el Art. 4 de la ahora Ley Núm. 17, se puntualiza que:

> **Para mantener un justo balance y equilibrio el Artículo 4 de la medida establece unos criterios que deben considerarse en todo caso en donde se reclame la responsabilidad del patrono por actos de hostigamiento sexual realizados por sus agentes, supervisores, compañeros de trabajo y terceras personas contra empleados. A estos efectos se expresa que cada caso se examinará considerando los hechos particulares del caso y las circunstancias en que ocurrieron esos hechos. De esta forma al hacerse determinaciones caso por caso se evita la injusticia de establecer una norma tan general que en su aplicación a determinados hechos resulte no equitativa o poco razonable. Esta norma expresada en el Artículo 4 aplica a todas las circunstancias y a todo acto cubierto por la medida como principio de equidad.** (Énfasis nuestro.) Informe de la Cámara de Representantes sobre el Proyecto del Senado 1437, pág. 11.

En la otra opinión se interpreta el Art. 5 como un precepto que asigna responsabilidad "absoluta" a los patronos en todos los casos. Ahora bien, el Informe expresa que:

En el Artículo 5 de la medida se recoge la norma de responsabilidad que se aplicará a los patronos por las actuaciones de sus agentes o supervisores. La fraseología que se seleccionó para la redacción de esta sección es una traducción literal de las guías de la EEOC contenidas en 29 CFR 1604.11(c). **El propósito de utilizar esta redacción es que al aplicarse la norma a Puerto Rico se le dé la misma interpretación y alcance que se le ha dado en la jurisprudencia federal y específicamente la de la opinión mayoritaria en el caso decidido por el Tribunal Supremo de Estados Unidos en Meritor Savings Bank vs. Vinson. Esa interpretación está armonizada con las disposiciones del Artículo 4 de esta medida según expresamos anteriormente. En dicho caso de Meritor Savings Bank vs. Vinson el Tribunal Supremo de Estados Unidos se expresó a los efectos de que: '…we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors… As to employer liability we conclude that the Court of Appeals was wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of a particular case.' Estando conscientes de esta interpretación a la norma equivalente en la jurisdicción federal se adopta en Puerto Rico con el mismo alcance allí expresado porque ello armoniza con todo nuestro ordenamiento civil incluyendo la norma de responsabilidad expuesta en el Artículo 1803 de nuestro Código Civil. De hecho la medida no contiene todos los parámetros necesarios para determinar la forma y manera en que se ha de determinar la responsabilidad del patrono en caso de hostigamiento sexual debido a que ya están ampliamente cubiertos en el Código Civil de Puerto Rico especialmente en las disposiciones relativas a la responsabilidad de toda persona por los daños ocasionados por él y por aquellas personas por las que debe responder … De esta forma nuestro ordenamiento civil da normas supletorias necesarias para interpretar el alcance de esta medida y para determinar responsabilidad del patrono en todo caso y las posibles defensas de éste.** Informe de la Cámara

de Representantes sobre el Proyecto del Senado 1437, pág. 11.

Algunos miembros de esta Curia sugieren que ignoremos el historial expuesto en el Informe de la Cámara además, porque el Representante Luciano Hernández se abstuvo de votar en la medida debido a que estaba en desacuerdo en que los patronos respondieran vicariamente. No podemos coincidir en que este es un fundamento para descartar el resto del historial de la medida. Ello pues, la responsabilidad vicaria está claramente establecida en esta. Nuestra tesis, en cambio, es que hay cabida en nuestro ordenamiento a presentar defensas una vez se imputa este tipo de responsabilidad vicaria al patrono en los casos de hostigamiento sexual. El hecho de que un legislador no estuviera de acuerdo con la imposición de responsabilidad vicaria no opera a favor de que se excluyan las defensas que hoy proponemos. Vale la pena resaltar además, que el legislador en cuestión, al rehusarse a emitir su voto no se refirió al mal empleado término de "responsabilidad absoluta", este usó el término correcto de "responsabilidad vicaria". Véase Diario de Sesiones de la Cámara de Representantes, Aprobación Proyecto del Senado 1437, pág. 61, 24 de marzo de 1988.

Luego de examinar el texto de la Ley Núm. 17 reconocemos que, ciertamente, el Art. 5 consigna que el patrono será responsable por los actos de hostigamiento sexual cometidos por sus supervisores o agentes independientemente de que haya tenido conocimiento de los mismos. Sin embargo, este no excluye de manera categórica que el patrono tenga defensas afirmativas para enfrentar la responsabilidad que se le quiere imputar. Dicho de otro modo, el texto del Art. 5 de la Ley Núm. 17, *supra*, no

CC-2009-0243 Cons. con AC-2009-0020

contradice de forma alguna la conclusión a la que arribamos de que un patrono pueda presentar defensas afirmativas en casos como el que nos ocupa. No estamos apartándonos del texto de la ley. Adviértase que el hecho de que la Asamblea Legislativa prohíba una defensa no implica que prohíba otras. Por esa razón, es innecesario acudir al Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, cuando es evidente que **el texto del Art. 5** de la Ley Núm. 17, *supra*, **no es del todo claro y no esta libre** de toda ambigüedad.

Ante este cuadro, es preciso recurrir a los principios de hermenéutica para descubrir y hacer cumplir la verdadera intención del Poder Legislativo en esta medida. Rosario Toledo v. Distribuidora Kikuet, 151 D.P.R. 634 (2000). Es plausible apuntar que, la Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez por medio de una nota al calce[23] no excluye esta posibilidad. En vista de ello, soy del criterio que son contradictorias las expresiones que "inequívocamente" resuelven que el mandato recogido en el Art. 5 de la Ley Núm. 17 es claro y, por ello, el patrono responde vicariamente por todos los actos de hostigamiento sexual realizados por sus agentes o supervisores dirigidos hacia empleados de menor jerarquía en toda circunstancia. Mediante estas aseveraciones, por una parte, se apoya la imposición de responsabilidad "absoluta" y, por otra, se dice que no hay óbice en nuestro ordenamiento jurídico para adoptar la teoría de la defensa afirmativa por parte del patrono, según esbozada por el Tribunal Supremo de

---

[23] La otra opinión cita el caso de la Corte Suprema de California, State Department of Health Services v. Superior Court, 31 Cal. 4th 1026 (2003) en su nota al calce núm. 7. Ello para decir que la defensa afirmativa más detallada allí adoptada no es incompatible con nuestro ordenamiento jurídico. Véase Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez, págs. 30-31.

California. Esto milita en clara contravención con la intención legislativa plasmada en el Informe de la Cámara de Representantes. Recordemos que en el Informe se expresó que para interpretar la Ley Núm. 17 debemos hacerlo conforme a la normativa federal expuesta en Meritor Savings Bank v. Vinson, supra.

Se suscitan además, serias preocupaciones en torno a la aplicación de responsabilidad absoluta en estos casos. En primer lugar, la tesis expuesta en la otra opinión le deja como única salida al patrono para liberarse de responsabilidad el que no se pruebe que hubo hostigamiento sexual por parte de sus supervisores. Esa situación, provocaría que el patrono se vea precisado a defender a su agente o supervisor frente a un reclamo de esta índole. Ello, incluso en los casos en que el patrono tenga conocimiento de que dichos actos se configuraron. Daniel Quiles Pumarejo, La responsabilidad legal del patrono por los actos de hostigamiento sexual de sus supervisores: recomendaciones en el desarrollo doctrinal, 42 Rev. Der. Puertorriqueño 2 (2003). [24] Otra consecuencia de esta interpretación será que el hostigador se resguardará bajo la figura del patrono, buscando protección, incentivándose de esta forma la continuidad de la conducta legal. Íd. Asimismo, se promueve que las partes reclamantes establezcan casos frívolos e inmeritorios en búsqueda de ganar cuantiosas sumas de dinero a costas del patrono. Íd. En relación a este aspecto, resulta altamente irrazonable que se obligue a un patrono a asumir una serie de responsabilidades para mantener un proceso de querellas

---

[24] Citamos el referido artículo para exponer las contradicciones de la interpretación que avala parte de este Tribunal. No obstante, no hacemos eco de las expresiones de dicho escrito sobre que la Ley Núm. 17 establece responsabilidad absoluta al patrono de manera diáfana.

para sus empleados así como una política empresarial contra el hostigamiento sexual en el empleo, para que a fin de cuentas, en toda instancia sea responsable ante cualquier reclamación bajo el Art. 5 de la Ley. Íd.

Discutido lo anterior, es imperativo revisitar la intención legislativa para aclarar la responsabilidad patronal en estas instancias. Al así hacerlo, me veo impedido de avalar la posición inflexible que adoptan los otros miembros de este Foro. Hacer lo contrario sería reconocer un estándar injusto que evidentemente está en conflicto con los propósitos forjados por el legislador en la Ley Núm. 17. El auscultar la intención legislativa aclara el intríngulis y alcance de este estatuto. Recordemos que este andamiaje legal le exige al patrono adoptar e implementar todas las medidas afirmativas y concretas dirigidas a prevenir el hostigamiento sexual.

Aunque en el Informe del Senado de Puerto Rico sobre el P. del S. 1437 se reseña que la mejor forma de asegurar el compromiso de parte del patrono contra el hostigamiento sexual es imponiendo responsabilidad absoluta, ello se debe interpretar a la luz de los pronunciamientos de su cuerpo hermano que presentó un informe de amplio contenido. Debemos puntualizar que durante el trámite legislativo los secretarios y jefes de agencias de la Rama Ejecutiva participan en el análisis de las medidas. Ahora bien, ello no implica que una misiva que alguno de estos funcionarios le remita al Primer Ejecutivo constituya la letra de la ley o sea parte de la intención legislativa.

Es por ello, que hoy adoptamos los factores que la Asamblea Legislativa consideró al momento de fijar el grado de

responsabilidad patronal en los casos de hostigamiento sexual. Consecuentemente, en esta opinión emitimos nuestro criterio a la luz del historial legislativo. Es decir, que el texto del Art. 5 de la Ley Núm. 17 no excluye en forma alguna las posibles defensas que están disponibles al patrono y que también pueden ser invocadas en la esfera federal.

Entendemos que es un error de metodología adjudicativa no consider la totalidad del historial legislativo y simple y llanamente concluir que el Art. 5 prohíbe invocar cualquier tipo de defensa afirmativa.

## III

Ya expuestos nuestro criterio sobre la aplicabilidad de la responsabilidad patronal por los actos de hostigamiento sexual de los supervisores o agentes, procedemos ahora al análisis de la controversia de autos.

En este caso se estableció que la señora Ortiz González fue víctima de hostigamiento sexual por parte del señor Rivera, subgerente del restaurante Burger King. **No hay lugar a dudas de que el codemandado creó mediante sus comentarios y acciones un ambiente hostil, intimidante y ofensivo para la señora Ortiz González.** Ello, en clara contravención de lo dispuesto en el Artículo 3 (c) de la Ley Núm. 17. Por tal razón, el foro primario concluyó que el patrón de hostigamiento ocasionó que la demandante fuera humillada como mujer. **Asimismo, dicho foro reconoció que Burger King fue diligente al atender la queja de la demandante y cumplió con la política pública contra el hostigamiento sexual en el empleo.** Véase Apéndice del recurso, págs. 235-236, 255. **Empero, luego de revisar las determinaciones**

**de hecho según expuestas por el foro primario, es forzoso concluir que igualmente la demandante fue diligente al notificar a su patrono sobre la conducta de hostigamiento sexual que sufrió de parte del señor Rivera.**

Coincidimos con el tribunal primario, en que el patrono cumplió con sus responsabilidades de prevenir y corregir prontamente la conducta de hostigamiento. Ello, pues Caribbean Restaurants tenía vigente una política que prohibía el hostigamiento sexual en el empleo, así como normas de conducta y procedimientos para dilucidar controversias de esta naturaleza. Además, la compañía tenía desplegados en todas sus instalaciones afiches del Departamento del Trabajo y de sus políticas antidiscrimen y contra el hostigamiento sexual. Incluso, tenía una línea especial "hotline" para atender cualquier tipo de queja. También hay constancia, que previo a comenzar su empleo la demandante recibió la documentación sobre las políticas y adiestramientos sobre el tema. Igualmente, en abril de 2000 la empresa conceptualizó la "Política de Caribbean Restaurants, LLC (Burger King) sobre Discrimen y Hostigamiento en el empleo". En el mes de julio la demandante recibió otro adiestramiento sobre esta política.

Por otro lado, ante la petición de la señora Ortiz González de desistir de la queja, la gerencia optó por cumplir con la política contra el hostigamiento y llevar a cabo una investigación. Subsiguientemente, suspendió del empleo al señor Rivera como medida preventiva. Asimismo, luego de concluir la investigación, se le requirió que presentara la renuncia al codemandado.

Estas medidas constituyeron acciones afirmativas y denotan un genuino interés del patrono por hacer cumplir la política pública contra del hostigamiento sexual. De otro lado, la demandante no incurrió en dilaciones en informar y tomar medidas para evitar el comportamiento ofensivo, degradante e irrespetuoso de parte del señor Rivera. La prueba demuestra que la conducta constitutiva de hostigamiento surgió entre los meses de mayo a agosto de 2000 y la empleada reportó la misma en este último mes. Entendemos que fue un periodo razonable y que la demandante fue diligente al solicitar la protección de medidas correctivas de su patrono.

En atención a ello, si aplicamos la doctrina establecida por el Tribunal Supremo federal de <u>Faragher</u>, supra, y <u>Ellerht</u>, supra, arribamos al mismo resultado al que llegan los otros cuatro compañeros de esta Curia. Es decir, que Caribbean Restaurant debe responder vicariamente por el hostigamiento sexual cometido por el señor Rivera. Recordemos que la normativa federal le provee al patrono una defensa afirmativa en los casos de hostigamiento sexual cometido por supervisores, en su modalidad de ambiente hostil. El examen a realizarse para determinar si procede esta defensa consiste en determinar si el patrono evidenció mediante preponderancia de prueba dos factores que repetimos: **(a) que el patrono ejerció un cuidado razonable para prevenir y corregir prontamente cualquier conducta de hostigamiento, y (b) que el empleado demandante irrazonablemente falló en aprovechar las oportunidades de medidas preventivas o correctivas provistas por el patrono para evitar los daños.** <u>Faragher v. City of Boca Raton</u>, supra, pág. 807; <u>Burlington Industries, Inc. v. Ellerth</u>, supra, pág. 765.

Como se puede apreciar del expediente judicial, Caribbean Restaurants sí ejerció el debido cuidado para promover la política contra el hostigamiento sexual. Además, el patrono no tomó ninguna medida adversa o acción laboral tangible contra la señora Ortiz González. Sin embargo, a la luz de los hechos probados y la totalidad de las circunstancias, no podemos concluir que la demandante falló en aprovechar las medidas correctivas provistas por su patrono. En consecuencia, colegimos que Caribbean Restaurants también responde solidariamente por las acciones realizadas por su subgerente.

IV

Por los fundamentos enunciados, coincido con la revocación de parte de la sentencia emitida por el Tribunal de Apelaciones que libera al patrono de responsabilidad por los actos constitutivos de hostigamiento sexual. En consecuencia, estoy conteste con el curso decisorio emitido a los efectos de fijar responsabiliad solidaria a los demandados de conformidad a lo antes expuesto en nuestra Sentencia.

Edgardo Rivera García
Juez Asociado